498 So.2d 896 (1986)
THE FLORIDA BAR, Petitioner,
v.
Merrell G. VANNIER, Respondent.
No. 61691.
Supreme Court of Florida.
November 26, 1986.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, Patricia J. Brown and Diane Victor Kuenzel, Bar Counsels, Tampa, and John Fernandez, Special Counsel, Clearwater, for complainant.
Bennie Lazzara, Jr. of Bennie Lazzara, Jr., P.A., Tampa, and Carl E. Kohlweck, Santa Monica, Cal., for respondent.
PER CURIAM.
This disciplinary proceeding against Merrell G. Vannier is before us on complaint of The Florida Bar and the report of the referee recommending that Vannier be disbarred. Vannier petitions this Court for review of the referee's findings of facts and recommendations of guilt and discipline. We have jurisdiction. Art. V, § 15, Fla. Const. We approve the referee's findings and recommendations.
The complaint against Vannier was in six counts. Count I alleges that Vannier solicited *897 the representation of Gabriel and Margaret Cazares in violation of the Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(1), 1-102(A)(4), 1-102(A)(6) and 2-103(A). Count II alleges that this representation presented a conflict of interest in violation of Disciplinary Rules 1-102(A)(1), 1-102(A)(4), 1-102(A)(6), 5-101(A), 5-105(A), 5-105(B) and 5-105(C). Count III alleges that through his position as counsel for Cazares and by misrepresentation, Vannier obtained access to the confidential litigation files of an attorney and his client in violation of Disciplinary Rules 1-102(A)(1), 1-102(A)(4), 1-102(A)(5), 1-102(A)(6) and 7-102(A)(8). Count IV alleges that Vannier attempted to obtain client Gabriel Cazares' signature, contrary to the client's interest, on a document entitled RETRACTION/APOLOGY in violation of Disciplinary Rules 1-102(A)(1), 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 5-101(A) and 7-102(A)(8). Count V alleges that Vannier attempted to obtain client Gabriel Cazares' signature, contrary to the client's interest, on a document entitled AGREEMENT in violation of Disciplinary Rules 1-102(A)(1), 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 5-101(A) and 7-102(A)(8). Count VI alleges that Vannier, in the guise of a job applicant and volunteer worker, sought and obtained access to the State Attorney's Office, St. Petersburg Division, contrary to the interest of the State Attorney, in violation of Disciplinary Rules 1-102(A)(1), 1-102(A)(4), 1-102(A)(6) and5-101(A). The referee recommended findings of guilt on Counts I, II, III and VI and not guilty on Counts IV and V.
The allegations against Vannier can be capsuled into one basic charge: that Vannier was an undercover agent for the Church of Scientology (the Church) who used his position as a member of The Florida Bar for purposes contrary to the interests of his clients and to his oath as an attorney and to the Code of Professional Responsibility. The evidence at trial showed the following. In 1975, acting through front corporations, the Church purchased a major building in Clearwater, Florida, and began operations which attracted public attention. Public disputation arose between the Mayor, Gabriel Cazares, and the Church. As a result, in early 1976 the Church sued Mayor Cazares in a federal court and Mayor Cazares and his wife sued the Church in a state court. In reaction to the public dispute, cognizant officials of the Church identified enemies to be infiltrated which included, inter alia, the Mayor and State Attorney. Vannier, a member of the Church in Missouri, was also a member of an autonomous section of the Church responsible for overt and covert intelligence operations. Vannier and his wife were assigned the code name "Ritz" and moved to Clearwater, Florida, in March 1976. Vannier obtained permission to work as a volunteer at the state attorney's office, which was conducting an investigation of the Church's local operations, and his wife worked as a volunteer at Mayor Cazares' election headquarters. In addition, Vannier was soon introduced by his wife to Mayor Cazares. Vannier repeatedly offered and urged his services as counsel to Mayor Cazares in the suit in state court against the Church and was hired as such in December 1976. By this time Vannier had become associated with a local law firm. By virtue of his status as counsel to Mayor Cazares, Vannier sought and obtained access to the litigation files of another person involved in litigation with the Church and the files of Mayor Cazares and another lawyer who was defending the Mayor in federal court. In mid to late 1977, the Cazares became dissatisfied with Vannier's legal advice and his handling of their suit and dismissed both Vannier and the suit. Vannier attempted to persuade the Mayor that the dismissal must be with prejudice. The Mayor later obtained other counsel and reinstated the suit. In late 1977, Vannier left the law firm with which he was associated without notice, without turning over pending cases and clients, without leaving a forwarding address, and without removing his personal effects, e.g., diplomas, from his office. The Church, or its agents, were involved in numerous civil and criminal cases throughout the United States during *898 and following this period of time. As a result of discovery in these civil and criminal cases, particularly the seizure of documents from the Church's Los Angeles headquarters, it was revealed that Vannier was an undercover agent for the Church. These disciplinary proceedings followed.
Vannier presents numerous points in support of his position that the referee's report should be disapproved. First, he argues, the evidence consists largely of unauthenticated and unreliable hearsay and that admission of such evidence denies him his confrontation and due process rights. The hearsay to which Vannier refers consists largely of documents seized by the Federal Bureau of Investigation from the headquarters of the Church in the course of an unrelated criminal prosecution or documents and depositions obtained as a result of discovery in other unrelated civil litigation. We are persuaded that the hearsay in question was adequately authenticated and its reliability established. Disciplinary proceedings are neither civil nor criminal but are quasi-judicial. Fla.Bar Integr.Rule, art. 11, Rule 11.06(3)(a). In Bar discipline cases, hearsay is admissible and there is no right to confront witnesses face to face. The referee is not barred by technical rules of evidence. State ex rel. The Florida Bar v. Junkin, 89 So.2d 481 (Fla. 1956); State ex rel. Kehoe v. McRae, 49 Fla. 389, 38 So. 605 (1905).
Vannier next argues that the referee's findings and recommendation violate his freedom of speech, religion and associational privacy by judging him on the basis of the conduct of the Church rather than his own conduct. It may be, as this argument necessarily suggests, that various Church officials committed despicable and illegal acts. However, it is Vannier who is a member of The Florida Bar and before us in a disciplinary proceeding. The evidence shows that Vannier voluntarily acted as a spy and agent provocateur for the Church and its officials who were attempting to destroy or subvert their critics and that Vannier's conduct violated his oath and the Code of Professional Responsibility.
As a variation of the above argument, Vannier argues that the referee's findings and recommendations should be disapproved because they stand for the proposition that members of the Scientology religion are prohibited from Bar membership. Except as they bear on Vannier's conduct, we are not here concerned with the tenets or beliefs of the Scientologists. We will address that issue if or when it arises.
Vannier argues that referee's findings and recommendations should be disapproved because they are not supported by clear and convincing evidence and are contrary, in crucial aspects, to the evidence. A referee's findings of fact and recommendations come to us with a presumption of correctness and should be upheld unless clearly erroneous or without support in the record. The Florida Bar v. Lipman, 497 So.2d 1165 (Fla. 1986); The Florida Bar v. McCain, 361 So.2d 700 (Fla. 1978); The Florida Bar v. Hirsch, 359 So.2d 856 (Fla. 1978). The internal documents of the Church and the deposition of a key official of the Church clearly show the particulars of the plan to place Vannier (Ritz) in position as the Cazares' attorney, the extensive efforts and plans to protect him from exposure, and the satisfaction of Church officials with the results obtained. This hearsay evidence is independently corroborated by direct evidence from the Cazares, the State Attorney and lawyers representing other clients as to how Vannier obtained employment and access to information concerning litigation with the Church. We also note Vannier's flight from his law firm in the period following the seizure of internal Church documents revealing his role as an agent for the Church as evidence of guilt. The referee's findings of fact and recommendations of guilt are fully supported by the record.
Finally, Vannier argues that the referee's recommendation of disbarment is too harsh a penalty. In support, Vannier argues that none of the violated parties suffered injury, that his current character is *899 honorable, that these events occurred almost ten years ago, that he had no prior, and has had no subsequent, ethical problems, that the acts were isolated and will not recur, and that he was a recent law school graduate. These arguments are utterly unpersuasive. If there is a more cardinal violation of the Code of Professional Ethics than undertaking the representation of a client and using that fiduciary position to promote the interest of an opposing party, Vannier has not pointed it out. Under these circumstances, disbarment is the only remedy which will serve the public interest.
We are told that Vannier does not now practice, and has not recently practiced, law in the state. Accordingly, Vannier is disbarred effective immediately. Judgment for costs in the amount of $5,976 is hereby entered against respondent for which sum let execution issue.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
ADKINS, J., concurs in part and dissents in part with an opinion, in which BOYD, J., concurs.
ADKINS, Justice, concurring in part and dissenting in part.
I concur with the Court's findings of guilt but find the disbarment is not warranted in this instance.
Disbarment is an extreme penalty and should only be imposed in those rare cases where rehabilitation is highly improbable. The Florida Bar v. Davis, 361 So.2d 159 (Fla. 1978); The Florida Bar v. Carlson, 183 So.2d 541 (Fla. 1966). The events in question took place ten years ago when Vannier was a recent law school graduate. The fact that Vannier has had no subsequent ethical problems is convincing evidence that he has in fact been rehabilitated and is unlikely to partake in unethical conduct in the future.
Without explanation, the majority of this Court refuses to consider several valid mitigating factors which weigh against disbarment. Among the several mitigating factors are the following: Vannier had no prior record of disciplinary activity and has exhibited good behavior subsequent to this incident, The Florida Bar v. Papy, 358 So.2d 4 (Fla. 1978); no party has been injured by Vannier's actions, The Florida Bar v. Whitlock, 426 So.2d 955 (Fla. 1982); Holland v. Flournoy, 142 Fla. 459, 195 So. 138 (1940); Vannier did not violate any law; and the events in question occurred ten years ago.
I would order a public reprimand and a ninety (90)-day suspension from the practice of law.
BOYD, J., concurs.