650 So.2d 980 (1995)
THE FLORIDA BAR, Complainant,
v.
Lawrence J. SMITH, Respondent.
No. 82255.
Supreme Court of Florida.
February 23, 1995.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Kevin P. Tynan, Bar Counsel, Fort Lauderdale, for complainant.
Neal R. Sonnett of Neal R. Sonnett, P.A., Miami, for respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar regarding alleged misconduct by the respondent, Lawrence J. Smith, and the referee's findings of fact and recommended discipline of a two-year suspension, nunc pro tunc September 24, 1993. We have jurisdiction. Art. V, § 15, Fla. Const. For the reasons expressed, we approve the referee's findings but reject the referee's recommended two-year nunc pro tunc suspension. We impose instead a three-year suspension, effective on the date of this opinion, finding that a three-year suspension is more consistent with other cases involving similarly situated respondents in bar disciplinary cases.
The facts of this case are as follows. Smith was charged with tax evasion and causing a false statement to be made to the Federal Election Commission. The tax evasion charge involved Smith's failure to report $110,398 in income for the tax years 1987 through 1990, which resulted in Smith's underpaying his income tax for those years by $37,834, excluding interest and penalties. The false statement to the Federal Election Commission involved Smith's reporting that he paid $10,000 from his congressional campaign account to Brian Berman for consulting services, when, in fact, Berman had not rendered those consulting services. After pleading guilty to these two felony charges, Smith was sentenced to three months in prison, two years of supervised release, and a $5,000 fine. Based on the felony convictions, Smith was automatically suspended from the practice of law in Florida on September 23, 1993, and the case was assigned to a referee.
The referee determined that there was no disputed issue of guilt in light of the two felony convictions. He consequently found Smith guilty of violating Rule Regulating The Florida Bar 4-8.4(a) (a lawyer shall not commit a criminal act). The referee then evaluated the aggravating and mitigating circumstances presented at the hearing in this case to determine recommended discipline.
In aggravation, the referee examined the following factors presented by the Bar:
(1) prior public reprimand for improperly allowing another attorney (Brian Berman) *981 to hold himself out as Smith's partner when no such partnership existed (referee found that public reprimand predated these proceedings but that subject matter of the reprimand was part and parcel of the conduct in this case because both arose out of Smith's relationship with Berman);
(2) dishonest or selfish motive (although referee found that Smith committed dishonest "acts," referee was not convinced Smith did so solely for dishonest or selfish "motives");
(3) pattern of misconduct (referee found this factor relevant but did not give it great weight);
(4) multiple offenses (referee found the additional count of false report to the Election Commission applicable, but gave it little weight because such charges are almost always handled administratively);
(5) vulnerability of victim (referee found this factor inapplicable  the Bar urged that the "public at large" was the vulnerable victim);
(6) substantial experience in the practice of law (referee found this factor applicable).
In mitigation, the referee considered:
(1) character or reputation (referee found Smith had an outstanding reputation);
(2) remorse (referee found Smith had profound sense of remorse);
(3) timely good faith effort to make restitution or to rectify the consequences of his actions (referee found Smith voluntarily repaid money owed his campaign fund more than a year before he was charged; and that he voluntarily informed the U.S. Attorney of unreported speech honoraria payments, agreed to pay all tax liabilities, and paid $5,000 fine to the Election Commission);
(4) full and free disclosure (referee found Smith was fully cooperative);
(5) absence of dishonest or selfish motive;
(6) personal or emotional problems (referee found both 5 and 6 applicable, determining that Smith was suffering from personal financial problems at the time of the incidents; that his "acts" were selfish but his "motives" were not);
(7) imposition of other penalties (referee found that media attention, jail time, and fines imposed caused Smith extreme embarrassment);
(8) no violation of duty owed to clients (referee found the offenses did not involve the practice of law); and
(9) testimony of witnesses (referee found very persuasive character testimony presented by three past-presidents of the Florida Bar, a past-president of the American Bar Association, a member of Congress, and two Florida State Senators).
After weighing these aggravating and mitigating circumstances, the referee recommended that Smith be suspended for a period of two years, nunc pro tunc September 24, 1993, the effective date of Smith's automatic suspension following the felony convictions, and that Smith be assessed the costs of this proceeding.
In this action, Smith asks that we uphold the referee's findings and impose the referee's recommended discipline. The Bar, on the other hand, requests that we disbar Smith.
A referee's findings are to be upheld unless those findings are clearly erroneous or without support in the record. The Fla. Bar v. Wilson, 643 So.2d 1063 (Fla. 1994); The Fla. Bar v. Vannier, 498 So.2d 896 (Fla. 1986). Given that this Court has the ultimate responsibility in ordering an appropriate sanction, however, our review of a referee's recommendation for discipline is somewhat broader. Wilson. Clearly, in this case, the referee correctly concluded that, based on the two felony convictions, Smith is guilty of violating rule 4-8.4(a) (a lawyer shall not commit a criminal act). See rule 3-7.2(b) (judgment of guilt of a felony is conclusive proof of guilt of the criminal offense). The issue, then, is whether the referee's recommended discipline is appropriate under the circumstances of this case.
This Court has not hesitated to disbar attorneys who knowingly and willfully engage in the felonious conduct of filing or assisting in filing fraudulent income tax returns. See The Fla. Bar v. Nedick, 603 So.2d 502 (Fla. 1992); The Fla. Bar v. Hosner, *982 536 So.2d 188 (Fla. 1988); The Fla. Bar v. Horne, 527 So.2d 816 (Fla. 1988). Moreover, we recently determined that the mere failure to file income tax returns warrants a suspension, even where no fraudulent conduct is involved. See, e.g., The Fla. Bar v. Pearce, 631 So.2d 1092 (Fla. 1994) (attorney who committed the misdemeanor of failing to file federal income tax returns received forty-five-day suspension). This does not mean, however, that the conduct at issue warrants automatic disbarment. As we stated in The Florida Bar v. Jahn, 509 So.2d 285, 286 (Fla. 1987), we must "view each case solely on the merits presented therein." For instance, in The Florida Bar v. Chosid, 500 So.2d 150 (Fla. 1987), the respondent, as did Smith, pleaded guilty to the felony charge of making and subscribing a false income tax return, but we imposed the sanction of a three-year suspension rather than disbarment.
The Bar contends that Smith's conduct is similar to that at issue in Nedick, in which we disbarred the respondent. In this regard, it is important to note the referee's comments.
Indeed, because The Florida Bar relies so heavily on Nedick ... it must be noted that the conduct in this case differs significantly from Nedick. Nedick conspired with his partners to hide cash fees, and his "only motive was pecuniary gain." [Nedick, 603 So.2d at 503.] In contrast, the great bulk of the income at issue in the instant case represented properly deposited checks, not hidden cash receipts, and the failure to report the income resulted from financial pressures and inability to pay, not from a purely selfish desire for pecuniary gain.
Given this finding, we conclude that Smith's conduct is distinguishable from that at issue in Nedick. We do not, however, agree that the referee's recommended two-year, nunc pro tunc suspension is sufficient. In imposing discipline, this Court must seek to reach a judgment that is not only fair to society and to the attorney but also severe enough to deter other attorneys from engaging in similar misconduct. Wilson, 643 So.2d at 1064. Under the facts of this case, we find that a three-year suspension is the appropriate discipline to achieve these goals.
Accordingly, we suspend Lawrence J. Smith from the practice of law for three years, effective on the date this opinion is filed. Because Smith is already under suspension pending resolution of this proceeding, we need not provide the usual thirty-day time period in which to allow him to close his practice. The costs of these proceedings are taxed against Smith and judgment is hereby entered in favor of the Bar in the amount of $1,675.67, for which sum let execution issue.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, HARDING and WELLS, JJ., concur.
KOGAN and ANSTEAD, JJ., recused.