T.C. Memo. 1997-370

UNITED STATES TAX COURT

MERRELL AND FRANCINE VANNIER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18536-95.                    Filed August 13, 1997.

Merrell Vannier, pro se.

<u>Gregory J. Powers</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and
182.  Respondent determined a deficiency in petitioners' 1991

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

Federal income tax in the amount of $1,126.  References to petitioner are to Merrell Vannier.

The sole issue for decision is whether petitioners are entitled to deduct $5,672[2] in legal expenses incurred as a result of petitioner's attempt to gain admission to the State Bar of California (California Bar).  Respondent has agreed that petitioner paid the above amount in legal fees and costs.

Background

Some of the facts have been stipulated, and they are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time they filed their petition, petitioners resided in La Crescenta, California.

Petitioner obtained a bachelor's degree in electrical engineering in 1971 and a law degree in 1975, both from the University of Missouri.  Petitioner sat for and passed the Missouri bar exam and was admitted to the Missouri State Bar (Missouri Bar) in 1975.  In addition, petitioner sat for and passed the Florida bar exam and was admitted to the Florida State Bar (Florida Bar) in 1976.  Petitioner practiced law in Florida for approximately 1 year.  In 1977, petitioner returned to Missouri and practiced law in the St. Louis area until 1979.  Petitioner eventually moved to California during 1979 and has

_____

[2]  Subject to the 2% floor.  Sec. 67.

resided there ever since. Petitioner never became licensed to practice law in California.

In 1980, the Florida Bar filed charges against petitioner for conduct occurring during 1976. The crux of the Florida Bar's allegations was that petitioner acted as "an undercover agent for the Church of Scientology * * * [and] used his position as a member of The Florida Bar for purposes contrary to the interests of his clients and to his oath as an attorney and to the Code of Professional Responsibility." The Florida Bar v. Vannier, 498 So. 2d 896, 897 (Fla. 1986).

In 1983, petitioner applied for admission to the California Bar. During 1984, petitioner sat for and passed the California Bar exam. As part of the application to the California Bar, petitioner was required to undergo a moral character review conducted by the California Committee of Bar Examiners (the Committee). By this time, the Florida Bar had not yet taken action on the 1980 bar charges. Consequently, the Committee refused to make a determination on petitioner's moral character until the Florida Bar resolved those charges. The Committee, therefore, placed petitioner's application on hold.

During 1986, a disciplinary proceeding took place to rule on the merits of the Florida Bar's 1980 charges. The referee overseeing the disciplinary proceeding recommended that petitioner be disbarred. On November 26, 1986, the Supreme Court

of Florida, by way of a published opinion, approved the referee's findings and ordered petitioner disbarred as of that date. See The Florida Bar v. Vannier, supra. Soon after, the State of Missouri, relying on the Florida ruling, disbarred petitioner.

In January 1987, upon learning of the results of the Florida decision, the Committee renewed its own moral character investigation. Ultimately, petitioner was denied admission to the California Bar based on facts found in the Florida ruling.

Around this time, petitioner and an acquaintance, Norman Taylor (Mr. Taylor), envisioned starting a public interest law firm that would assist consumers in securing refunds or replacement vehicles for their defective automobiles pursuant to Federal and State "lemon laws". Petitioner believed that establishing a firm specializing in lemon law would be a good idea because these laws were not being enforced at that time. In 1988, petitioner and Mr. Taylor co-founded the Law Offices of Norman Taylor (Taylor firm). The Taylor firm became very successful at bringing about "results and reform" in lemon law.

Petitioner worked at the Taylor firm as a full-time employee. Petitioner served as the firm's Executive Director and performed services as a "jack of all trades". At times, petitioner would assist on legal cases, allegedly performing only paralegal work.

While employed at the Taylor firm, petitioner experienced "problems" relating to the fact that he was a disbarred lawyer. Counsel opposing the Taylor firm would draw attention to petitioner's disbarred status through court pleadings. For example, opposing counsel had filed an ex parte motion to contest a ruling requiring them to pay attorney's fees to the Taylor firm, asserting that they did not want to contribute to the unauthorized practice of law. These and other manufacturers' defense attorneys, working on behalf of large automotive companies, made disparaging comments against petitioner and the Taylor firm in retribution for the successes they were having litigating lemon law matters.

In response to the "disparaging" comments and to "remove the stigma attached" to the status of being disbarred, petitioner reapplied for admission to the California Bar in 1989. He sat for and passed the California bar exam for the second time. He then waited for the Committee to complete their moral character review.

In the course of this review, the Committee elicited background information from petitioner, including his then-recent activities at the Taylor firm. The Committee also contacted attorneys who had opposed the Taylor firm in its attempt to find information about petitioner's reputation and moral character. As a result of this investigation, several members of the lemon

law defense bar came forward to make allegations against petitioner.  Based on petitioner's history and those allegations, the Committee challenged petitioner's admission to the bar on moral character grounds.  Petitioner contested the Committee's determination in the California State Bar Court (Bar Court).

The legal costs in dispute are a result of petitioner's challenge to the Committee's determination.  The Bar Court proceeding was similar to a civil trial, with petitioner having the burden of proof.  It was an evidentiary hearing overseen by a referee, where witnesses testified and were cross-examined.  Six members of the manufacturing defense community testified against petitioner.  The referee did not issue an immediate ruling, but took the matter under submission.

Meanwhile, as a result of the negative publicity the Taylor firm had received relating to his employment, petitioner left the firm at the end of August 1991.  He continued his association with the firm, however, as a part-time consultant through the end of that year.  Petitioner was forced to leave the Taylor firm because it was "too high profile for a disbarred lawyer to be running the firm, given all the negatives attached to it".

In April 1992, the Bar Court referee ruled that petitioner, in light of his past disbarments and the 6 attorneys testifying against him, did not satisfy his burden and recommended that petitioner be denied admission to the California Bar.  Petitioner

appealed this ruling to the State Bar Appellate Section, but was unsuccessful.  The Appellate Section not only affirmed the referee's determination, but, in addition, found that petitioner had been engaged in the unauthorized practice of law.

On their 1991 Schedule A, petitioners claimed a $5,433[3] employee business expense deduction as a result of the legal expenses incurred in challenging the Committee's determination. This amount includes expenditures for discovery and lawyer's fees.  In the notice of deficiency, the Commissioner disallowed this deduction.

## Discussion

Deductions are a matter of legislative grace, and petitioners must prove that they are entitled to the claimed deduction.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  Moreover, section 212 allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income.  Personal expenditures, however, are not deductible. Sec. 262.

---

[3] Petitioner submitted checks totaling $5,672 in support of the above deduction and now claims a deduction for that amount. Respondent has agreed to accept petitioner's increased amount if petitioner prevails on the substantive issue.

We have repeatedly held that a taxpayer may not deduct fees paid and costs incurred to gain admission to a State bar under section 162(a). Sharon v. Commissioner, 66 T.C. 515, 527 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978); Ryman v. Commissioner, 51 T.C. 799, 801-803 (1969). We have based our holding, in part, on the rationale that since a taxpayer could reasonably expect the useful life of a license to extend beyond 1 year (i.e., indefinitely), the cost of such license is a non-deductible capital expenditure. Moreover, educational expenditures that are paid or incurred to meet the minimum educational requirements for qualification in a taxpayer's trade or business or which qualify the taxpayer for a new trade or business are "personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses". Sec. 1.162-5(b), Income Tax Regs. Likewise, the regulations under section 212 specifically prohibit the deductibility of "bar examination fees and other expenses paid or incurred in securing admission to the bar". Sec. 1.212-1(f), Income Tax Regs.

On the other hand, legal expenses are deductible under section 162(a) as ordinary and necessary business expenses if the litigation is directly connected with or proximately related to the taxpayer's business. Bingham's Trust v. Commissioner, 325 U.S. 365, 373-374 (1945); Rafter v. Commissioner, 60 T.C. 1, 8

(1973), affd. without published opinion 489 F.2d 752 (2d Cir. 1974). The "origin-of-the-claim" which gave rise to the litigation, rather than the consequence of the litigation, is evaluated to ascertain whether the expenses are business or personal in nature. United States v. Gilmore, 372 U.S. 39, 48-49 (1963).

In the present case, we are faced with the convergence of the above legal principles. Petitioner attempts to deduct legal expenses incurred through his effort to gain admission to the California Bar. He contends that he is entitled to deduct these fees as an ordinary and necessary business expense. Petitioner asserts that his primary purpose for seeking admission to the California Bar was to protect his job at the Taylor firm and to defend his professional reputation. Conversely, respondent argues that the legal fees are nondeductible expenditures. Respondent contends that the origin of petitioner's legal action stemmed from his application to the California Bar and is therefore nondeductible. We agree with respondent.

Petitioner confuses the concept of the origin-of-the-claim with that of the consequence or the primary purpose of the litigation. Only the origin-of-the-claim is relevant to the disposition of this case. Harden v. Commissioner, T.C. Memo. 1991-454. Petitioner's challenge to the Committee's determination gave rise to the legal fees in question. Hence,

the origin of petitioner's claim is his attempt to gain admission to the California Bar.

Our holding is supported by United States v. Gilmore, supra. The issue before the Supreme Court was whether a husband's legal expenses in divorce proceedings were deductible. The husband's overriding concern in the litigation was: (1) To protect certain assets, upon which the husband relied for his principal means of livelihood, from his wife's claims; and (2) to defend against his wife's reputation-damaging charges of marital infidelity which, if found, might also have adversely affected the husband's principal means of livelihood.

In finding that the expenses were not deductible, the Supreme Court rejected a test that looked to the consequences of the litigation. Instead of examining the taxpayer's motives or purposes for the undertaking the litigation, the Supreme Court examined the origin and character of the claim. In so doing, the Supreme Court concluded that the claim arose out of the personal relationship of marriage, rather than in a business context.

Similarly, under the facts before this Court, while petitioner's primary purpose for bringing suit in Bar Court might have been to protect his job and business reputation, his motives for initiating the process are not considered. Equally irrelevant are the consequences the suit may have had on restoring petitioner's business reputation, had he prevailed.

What is dispositive, however, is the fact that the legal expenses in question arose out of an action to gain admission to the California Bar.  These costs are treated as bar admission expenses and are, therefore, nondeductible under either section 162 or 212.  Accordingly, petitioners are not entitled to their claimed deduction.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.