# Supreme Court of Florida

_____

No. SC10-1793
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**SUSAN K. W. ERLENBACH,**
Respondent.

[May 1, 2014]

PER CURIAM.

We have for review an uncontested referee's report recommending that

Susan K. W. Erlenbach be found guilty of professional misconduct and suspended

for eighty-nine days, followed by a two-year period of probation. We have

jurisdiction. See art. V, § 15, Fla. Const. After considering the parties' responses

to our order to show cause,[1] we approve the referee's findings of fact and

---

1. The Court issued an order directing the parties to show cause why it should not disapprove the referee's recommended sanction and why a harsher sanction should not be imposed. Fla. Bar v. Erlenbach, SC10-1793 (Fla. Feb. 13, 2013).

recommendations of guilt. We disapprove the recommended sanction and, instead, impose a one-year suspension, followed by a two-year period of probation.

**FACTS**

The Florida Bar filed a complaint alleging that Respondent Susan K. W. Erlenbach had engaged in ethical misconduct. The case was referred to a referee to make findings of fact, recommendations as to guilt, and recommend a disciplinary sanction. Before the referee, the parties stipulated to facts that support a recommendation that Respondent is guilty of violating Rules Regulating the Florida Bar 3-4.3 (commission of an act that is unlawful or contrary to honesty and justice) and 4-8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation). The referee has submitted a report to the Court based on the parties' stipulation, in which the referee made the following findings of fact and recommendations.

Respondent has failed to file timely joint tax returns for the tax years 1997, 1998, 1999, 2000, 2001, 2002, 2004, 2005, and 2006, even after the extensions permitted by the Internal Revenue Service (IRS). Also, Erlenbach sought and received a discharge of liability for the taxes, interest, and penalties due for tax years 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005. She presently owes taxes, interest, and penalties to the Department of Treasury for tax years 2006, 2007, 2008, and 2009. The failure to file tax returns as required by the Internal

Revenue Code is a violation of the Bar rules. See Fla. Bar v. Behm, 41 So. 3d 136 (Fla. 2010); Fla. Bar v. Marks, 376 So. 2d 9 (Fla. 1979).

There was no evidence that Respondent attempted to evade responsibility for personal income taxes. The delays in filing the personal tax returns occurred during periods when Erlenbach was preoccupied not only with her law practice but with caring for several members of her extended family who had serious medical conditions from the middle 1990s through 2006. The IRS has imposed significant financial penalties and interest for the late tax returns, but has not charged her with a crime. Respondent has made payments in excess of $500,000 toward past due taxes, interest, and penalties.

In addition, Erlenbach withheld federal income tax, social security tax, and Medicare tax from employees of her professional association, "Susan K.W. Erlenbach, P.A.," but failed to pay the sums withheld over to the Department of the Treasury as required by the Internal Revenue Code. Respondent engaged in this activity intermittently from 2006 through 2008. As a result, the IRS determined that Respondent's professional association and Respondent individually owe a total of $13,634.05. Erlenbach and the IRS have agreed to a payment plan, which Erlenbach is following by making monthly payments as required by the agreement. More than half of this debt had been paid by the time of the hearing before the referee. The referee found that Erlenbach's failure to remit employment taxes was

not based upon greed or selfish motivation. Her lifestyle was not, and is not, lavish. The referee found that her failure to pay the withholdings and the employer's matching share is due to poor business management of her practice's finances.

Erlenbach's intentional failure to pay the Department of the Treasury the funds that were withheld from her employees constitutes violations of 26 U.S.C. § 7202, "Willful failure to collect or pay over tax," and 26 U.S.C. § 7203, "Willful failure to file return, supply information, or pay tax." Although Erlenbach has not been charged with or convicted of any misdemeanor or felony for her misdeeds, the failure to pay the funds withheld from employees to the federal government violates Bar rules 3-4.3 and 4-8.4(c). Respondent has a repayment agreement with the IRS and is performing her obligations under the agreement. Also, she has admitted that her failure to file timely joint personal tax returns, failure to pay her joint income tax obligations, and failure to pay withholdings violate Bar rules 3-4.3 and 4-8.4(c). Erlenbach has accepted responsibility for her misconduct.

With regard to aggravating factors, Respondent has been the subject of three prior disciplinary proceedings. The first case, in 2001, resulted in a finding of minor misconduct, admonishment, and one year of probation. For the second case, which occurred in 2006, Erlenbach received a public reprimand and two years of probation. In the third case, in 2007, she was the subject of a petition for contempt

- 4 -

for failing to comply with the terms of her disciplinary probation. She was suspended in July 2007 subject to her suspension being lifted upon compliance with the terms of probation. Respondent's suspension was lifted in October 2007 and she completed her probationary period without further incident. Her prior disciplinary cases in 2006 and 2007 are aggravating factors.

The second aggravating factor is that Respondent's repeated late filing of tax returns and failure to pay taxes demonstrate a pattern of misconduct. She failed to pay over her employees' withheld taxes to the federal government in 2006, 2007, and 2008.

The third aggravating factor is that Erlenbach has been practicing law since 1982, so she is experienced as an attorney.

As for mitigating factors, Respondent has admitted that she failed to pay federal income taxes, failed to timely file federal income tax returns, and failed to pay money withheld from her law firm's employees. She has admitted to violating Bar rules 3-4.3 and 4-8.4(c). Erlenbach has accepted responsibility for her misconduct, expressed remorse, and cooperated during these proceedings.

An extensive number of judges and attorneys testified that Respondent is an able advocate who vigorously represents her clients in a capable and professional manner. The witnesses' testimonies indicate that Respondent enjoys a good professional and ethical reputation among her clients, other attorneys, and the

judiciary. She provides valuable legal services to her clients, many of whom could not afford an attorney but for her.

Next, Respondent has put in place procedures to avoid any continued violation of the regulations regarding tax withholdings. Also, she has established a payment schedule to repay the taxes due and has paid more than fifty percent of those amounts.

Further, Erlenbach provides services as an advocate to many clients who are underprivileged and whose rights would otherwise not be protected by a skilled advocate. She has actively provided legal services for the less fortunate for the past twenty years.

In addition, the personal and emotional problems Respondent was experiencing were a substantial contributing factor in her misconduct. Her financial problems occurred during the same period that: (1) her husband had been diagnosed with and was being treated for cancer, and (2) there was an economic decline in her geographic area due to termination of the space shuttle program. Also, she suffers from depression and severe anxiety.

As a disciplinary sanction, the referee recommended an eighty-nine-day suspension, followed by a two-year period of probation, and payment of disciplinary costs totaling $4,274.20. The conditions of probation would include quarterly reports to the Bar reflecting payment of all taxes due for Respondent's

law firm's employees and payment of any personal income tax due on Respondent's individual income. As a term of probation, Erlenbach would submit to the IRS an offer and compromise concerning her personal tax debt.

## THE COURT'S REVIEW

After the referee submitted the report, the Court reviewed the referee's findings and recommendations. See R. Regulating Fla. Bar 3-7.7(a)(2) (the Court shall review all reports of referees recommending probation, public reprimand, suspension, disbarment, or resignation pending disciplinary proceedings). Considering the Court's established case law, the referee's recommended sanction did not appear to be appropriate. Of the six cases cited by the referee to support the recommended sanction, five cases were decided in or before 1985. The sixth case was decided in 1994. The sanctions imposed in those specific cases are lenient when compared to more recent case law. In 2002, the Court commenced imposing more severe sanctions for attorney misconduct. See Fla. Bar v. Rotstein, 835 So. 2d 241, 246 (Fla. 2002). Thus, for the instant case, the Court issued an order directing the parties to show cause why it should not disapprove the referee's recommended discipline and why a harsher sanction should not be imposed. See R. Regulating Fla. Bar 3-7.7(c)(6)(A) (the Court may direct the parties to submit briefs directed to the appropriateness of the disciplinary measure recommended by

the referee).  The parties have filed separate responses to the order, which are discussed below.

## ANALYSIS

In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is our responsibility to order the appropriate sanction.  See Fla. Bar v. Anderson, 538 So. 2d 852, 854 (Fla. 1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions.  See Fla. Bar v. Temmer, 753 So. 2d 555, 558 (Fla. 1999).

Respondent asserts that the referee's recommended sanction is supported. She cites several cases to support a non-rehabilitative suspension, all but two of which were decided well over twenty-five years ago in the 1960s through 1980s.[2] One of the more recent cases Erlenbach cites is Florida Bar v. Smith, 650 So. 2d 980 (Fla. 1995).  Respondent argues that Smith supports the referee's recommended sanction because the respondent in Smith received a six-month suspension based on his conviction for tax evasion.  However, Respondent is

---

2. Although Respondent relies on one case stating that it was issued in 1997, the case was actually issued in 1977.  Fla. Bar v. Ryan, 352 So. 2d 1174 (Fla. 1977).

misguided because the Court imposed a three-year suspension in Smith. Further, under the Court's more recent case law, such as Behm, 41 So. 3d 138, it is likely Smith would receive a more severe sanction if his case were decided today.

The Bar also argues that the referee's recommended sanction is supported. The Bar relies upon Florida Bar v. Pearce, 631 So. 2d 1092 (Fla. 1994), in which the respondent received a forty-five-day suspension for failing to file personal income tax returns for a period of two years. Here, Erlenbach failed to file timely joint tax returns for nine years, which violated Bar rules 3-4.3 and 4-8.4(c). Further, she withheld funds for federal income tax, social security tax, and Medicare tax from her employees, but did not pay those funds to the Treasury Department as required by federal law. This misconduct constitutes additional violations of Bar rules 3-4.3 and 4-8.4(c). Thus, the misconduct in Pearce is significantly different from the misconduct in the present case. However, the Court's statement in Pearce directly speaks to Erlenbach's conduct—attorneys have a "special obligation to obey the law." Id. at 1092.

It is well established that attorneys' compliance with tax requirements is an issue that the Court takes very seriously. The Court has stated that "As guardians of the law, lawyers have a special obligation to honor the law themselves, including the tax laws." Fla. Bar v. Del Pino, 955 So. 2d 556, 560-61 (Fla. 2007). In Del Pino, the respondent received a three-year suspension based in part on her

conviction for filing a false motion for an extension to file and pay taxes. Id. at 558-59. The Court expressly noted that, but for significant mitigation, the respondent in Del Pino would have been disbarred. Id. at 563. Also, the Court clearly stated that it will discipline "attorneys for failing to live up to the duty of every citizen to pay federal income taxes." Id. at 561.

In Florida Bar v. Weed, 559 So. 2d 1094, 1096 n.4 (Fla. 1990), we expressly approved the referee's finding that the respondent's "failure to file tax returns amounted to engaging in illegal conduct involving moral turpitude . . . ." This misconduct, along with other misdeeds, resulted in a three-year suspension for Weed. See Smith, 650 So. 2d at 981-82 (suspending an attorney for three years for tax evasion and other misconduct where the attorney had underreported his income due to financial pressures and an inability to pay the full tax owed).

Similarly, in Florida Bar v. Cimbler, 2008 WL 2522532, *1 (Fla. 2008) (table citation at 994 So. 2d 306 (Fla. 2008)), the Court stated that "Cimbler's failure to timely file income tax returns and to timely pay income taxes is condemned and constitutes a failure of responsibility and a failure to be a responsible citizen." The Court disapproved the referee's recommended period of suspension, stating that "Such actions by a member of The Florida Bar warrant a longer suspension than that recommended by the referee." The Court imposed a

two-year suspension followed by a three-year period of probation as the appropriate sanction.

In the instant case, Erlenbach failed to file timely joint tax returns for nine years, even after the extensions permitted by the IRS. Next, although Respondent received a discharge of liability for the taxes, interest, and penalties due for tax years 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005, she still owes taxes, interest, and penalties for the 2006, 2007, 2008, and 2009 tax years. Erlenbach is clearly failing to abide by the laws that citizens are required to address each year. Further, the misconduct at issue is not an isolated lapse of judgment. Erlenbach's failures to comply with the tax requirements extend over a significant span of time—the referee found she has failed to comply with tax requirements for 13 years—which is intolerable as she is a professional who is responsible for assisting others with their legal issues. In Florida Bar v. Lord, 433 So. 2d 983, 986 (Fla. 1983), the Court found the respondent's repeated failures to file income tax returns for an extended period "reflect[ed] a flagrant and deliberate disregard for the very laws which respondent took an oath to uphold."

Next, Respondent engaged in additional misconduct by withholding federal taxes from her employees, but then failing to pay the sums withheld to the federal government. This failure occurred "intermittently from 2006 until 2008." We note that Respondent filed her quarterly tax returns in a timely manner even when she

was unable to remit the entire amount of taxes owed; thus, it appears she was candid with the IRS about these financial problems.

Erlenbach's conduct violates the Bar rules because she has committed acts that are unlawful or contrary to honesty and justice (rule 3-4.3) and she has engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation (rule 4-8.4(c)). The Court has repeatedly shown that it views an attorney's compliance with the tax laws as a very serious matter. See Behm, 41 So. 3d at 148-149 (the Court discussed disciplinary cases involving attorneys and tax requirements which resulted in disbarments or three-year suspensions).

Case law demonstrates that attorneys who fail to comply with tax laws are subject to severe sanctions. Here, the referee found that Erlenbach did not seek to evade paying taxes; rather, she did not have the financial means to make the payments. Also, Respondent has a repayment agreement with the IRS and the referee found that she is meeting her financial responsibilities under the agreement. Further, the referee found significant mitigation. For these reasons, we find that the appropriate sanction for Respondent is a one-year suspension followed by a two-year period of probation. The conditions of probation include quarterly reports to the Bar reflecting payment of all taxes due for Respondent's law firm's employees and payment of any personal income tax due on Respondent's individual income.

**CONCLUSION**

Accordingly, we approve the referee's findings of fact, recommendations of guilt, and award of costs. We disapprove the referee's recommended sanction of suspension for eighty-nine days. Susan K. W. Erlenbach is hereby suspended from the practice of law for one year, followed by a two-year period of probation. The suspension will be effective thirty days from the date of this opinion so that Susan K. W. Erlenbach can close out her practice and protect the interests of existing clients. If Respondent notifies this Court in writing that she is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Susan K. W. Erlenbach shall fully comply with Rule Regulating the Florida Bar 3-5.1(h), "Notice to Clients." Respondent shall accept no new business from the date this opinion is filed until she is reinstated by order of this Court.

Further, we approve the referee's recommended conditions of probation, which include quarterly reports to The Florida Bar reflecting payment of all taxes due for Respondent's law firm's employees and payment of any personal income tax due on Respondent's individual income.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Susan K. W. Erlenbach in the amount of $4,274.20, for which sum let execution issue.

It is so ordered.

POLSTON, C.J., and QUINCE, CANADY, and LABARGA, JJ., concur.
LEWIS, J., concurs in result.
PARIENTE, J., dissents with an opinion, in which PERRY, J., concurs.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE
EFFECTIVE DATE OF THIS SUSPENSION.


PARIENTE, J., dissenting.

I respectfully dissent from the majority's decision to reject the referee's

recommended discipline, which was agreed to by The Florida Bar and the

Respondent, consisting of an eighty-nine-day suspension followed by a two-year

period of probation, and instead suspend the Respondent for one year followed by

a two-year period of probation.[3] In imposing a much harsher sanction than was

recommended by the referee and concluding that the referee's recommended

discipline was without a reasonable basis in existing case law, the majority, in my

view, erroneously relies on prior cases from this Court that are readily

distinguishable from this case. While a review of this Court's recent decisions on

_____

3. The sanction imposed by the majority is actually more disparate from the referee's recommended discipline than it first appears. Under the sanction imposed by the majority, not only will the Respondent be unable to practice law for one year, but, upon the expiration of that suspension, she will have to seek reinstatement—a procedure that is not automatic and oftentimes extends an attorney's suspension by a substantial, additional period of time. See R. Regulating Fla. Bar 3-7.10 (providing the procedure through which a "lawyer who is ineligible to practice due to a court-ordered disciplinary suspension of 91 days or more" may seek to be reinstated to membership in good standing with The Florida Bar).

- 14 -

similar issues reveals that disbarment or a prolonged suspension, as imposed by the majority, is appropriate in some cases where an attorney fails to timely file tax returns, this Court has not recently addressed a case presenting misconduct that is similarly less aggravated and more mitigated as the Respondent's, which was not predicated upon selfish motive and did not result in a criminal conviction as in the cases cited by the majority.

Unlike the majority, I would uphold the referee's recommended discipline, which is a conclusion that is supported by the fact that the purposes behind lawyer discipline are not furthered—and are actually thwarted—by the sanction imposed by the majority. In addition to the fact that no clients were harmed by the Respondent's actions and that there is extensive mitigation in this case, the extended rehabilitative suspension imposed by the majority will cause great hardship to the Respondent's pro bono clients and will also impair the Respondent's ability to meet her continuing obligations to the Internal Revenue Service (IRS).

The discipline being imposed on the Respondent arises from her failure to timely file joint personal tax returns and her failure to pay her employees' withheld taxes to the federal government. As the majority acknowledges, there was "no evidence that Respondent attempted to evade responsibility for personal income taxes." Majority op. at 3. Indeed, as the majority notes, the failures that produced

the misconduct at issue occurred as a result of the Respondent's inability to pay the required taxes, during a time that she was "caring for several members of her extended family who had serious medical conditions." Id. Further, the Respondent has subsequently taken responsibility for her actions, has entered into a monthly payment plan with the IRS to repay her back taxes, and has already made payments to the IRS in excess of $500,000.

As for the Respondent's failure to pay her employees' withheld taxes to the IRS, the majority also recounted the referee's findings that the Respondent's "failure to remit employment taxes was not based upon greed or selfish motivation," and that the Respondent's "lifestyle was not, and is not, lavish." Majority op. at 3-4. Instead, as noted by the referee, the Respondent's failure to pay the withholdings and the employer's matching share was based solely upon the Respondent's poor management of her practice's finances. While this certainly does not justify her misconduct, it illustrates that the Respondent's actions do not justify the severe sanction imposed by the majority. Moreover, the Respondent has also accepted responsibility for this misconduct and has entered into another payment plan with the IRS in order repay the employment taxes she failed to remit.

On the other side of the equation, the Respondent also presented substantial mitigating evidence before the referee, who was able to fully weigh this mitigating evidence in recommending appropriate discipline. The referee heard testimony

from no less than nineteen witnesses, including distinguished judges and lawyers, who testified as to the Respondent's good character and reputation, her continued commitment to provide legal services to the poor, and the fact that her derelictions were not motivated by personal greed but by personal circumstances. Indeed, it is undisputed that the Respondent has actively provided legal services for the less fortunate for the past twenty years.

The majority itself notes the "extensive number" of judges and attorneys who testified that the Respondent "is an able advocate who vigorously represents her clients in a capable and professional manner . . . enjoys a good professional and ethical reputation among her clients, other attorneys, and the judiciary . . . [and] provides valuable legal services to her clients, many of whom could not afford an attorney but for her." Majority op. at 5-6. Some of the distinguished jurists who testified on the Respondent's behalf included Judges Bruce W. Jacobus and Vincent Torpy, of the Fifth District Court of Appeal, and Judge J. Preston Silvernail, of the Eighteenth Judicial Circuit Court.

While the majority explicitly acknowledges all of this mitigation, it nevertheless concludes that even though the Bar continues to advocate for the agreed-to sanction recommended by the referee, the failure to file joint personal tax returns for such a lengthy period of time deserves much more serious discipline. Although I appreciate the aggravating factors found by the referee, and admit that

failing to file tax returns constitutes serious misconduct, I conclude that the underlying misconduct in this case is substantially different than in the cases relied on by the majority and that this case involves the type of mitigation that does not require a rehabilitative sanction. Both of these factors differentiate this case from this Court's recent decisions in which the Court has disciplined attorneys for failing to timely file tax returns.

In Florida Bar v. Behm, 41 So. 3d 136, 148-149 (Fla. 2010), this Court discussed the range of recent cases in which this Court has disciplined attorneys who failed to timely file tax returns. For example, in Florida Bar v. Del Pino, this Court suspended an attorney for three years who had failed to file personal tax returns for several years based on a selfish motive, was convicted of two felonies, and had filed a false application for extension of time to file an income tax return. 955 So. 2d 556, 558-59 (Fla. 2007); see also Fla. Bar v. Smith, 650 So. 2d 980, 981-82 (Fla. 1995) (suspending an attorney for three years for two tax evasion convictions and other misconduct); Fla. Bar v. Nedick, 603 So. 2d 502, 503 (Fla. 1992) (disbarring an attorney based on a conviction for tax evasion and for filing a false tax return based upon a dishonest or selfish motive); Fla. Bar v. Weed, 559 So. 2d 1094, 1096 (Fla. 1990) (suspending an attorney for three years where the attorney was convicted for failure to file tax returns and also neglected legal matters). The majority relies on Del Pino, as well the other cases cited in Behm, as

support for rejecting the referee's recommended discipline and imposing a much harsher sanction. This reliance is misplaced, however, as each of these cases is readily distinguishable from this case.

Unlike the cases cited in <u>Behm</u>, the Respondent in this case did not willfully seek to avoid paying taxes, was truthful, was not charged with or convicted of any related crime, and has subsequently taken significant steps to remedy her past derelictions. Moreover, the mitigating circumstances underlying the Respondent's misconduct demonstrate that her misconduct is qualitatively different than the misconduct in those cases where this Court has imposed harsh discipline. These differences highlight why the type of discipline imposed by this Court in the past is inappropriate in this case and provide support for imposing the type of discipline recommended by the referee.

The only recent case cited by the majority that could potentially support the majority's rejection of the referee's recommended discipline is <u>Florida Bar v. Cimbler</u>, 994 So. 2d 306 (Fla. 2008) (table decision), in which this Court suspended an attorney for two years for failure to timely file tax returns. However, <u>Cimbler</u> is unpublished and provides no background into the attorney's misconduct. In the absence of any factual context for this Court's decision to impose a two-year suspension in <u>Cimbler</u>, it is unclear whether this case is on point, and thus it cannot form the basis for overturning the referee's recommended

- 19 -

discipline because it does not establish that the referee's recommended sanction had no reasonable basis in existing case law.

Additionally, the discipline imposed by the majority does not further the purposes that underlie attorney discipline, as articulated by this Court. In determining whether a sanction is appropriate, this Court has stated that it takes into account the following three purposes:

> First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.

Behm, 41 So. 3d at 150 (quoting Fla. Bar v. Barrett, 897 So. 2d 1269, 1275-76 (Fla. 2005)). In light of these purposes, I believe the harsh sanction imposed by the majority is inappropriate. Although the majority's sanction is undeniably severe enough to satisfy this Court's goal of deterring future misconduct, this penalty does not further the remaining two purposes of attorney discipline.

In imposing attorney discipline, this Court must not deny the public the services of a qualified lawyer as a result of undue harshness. Id. As recognized by both the referee and the majority, many of the Respondent's clients could not afford a lawyer if she did not agree to represent them. By suspending the Respondent from the practice of law for an extended period of time, this Court is

- 20 -

denying the public the services of a competent lawyer, willing to represent those who would otherwise go unrepresented, for longer than is necessary to adequately punish the Respondent for her misconduct.

Further, the harsh punishment imposed by the majority is unfair to the Respondent, because it will severely impede her ability to satisfy her obligations to the IRS. Without the ability to practice law for one year, the Respondent will surely experience difficulty in making the monthly payments she is obligated to make pursuant to her IRS payment plans. In my opinion, where an attorney has admitted her misconduct, has shown remorse, and has taken steps to repay the taxes that she previously failed to pay, it is counterintuitive to impose a lengthy suspension that will surely impair that attorney's ability to repay the unpaid taxes that are at the center of the misconduct.

It is also important to note that the majority's decision to impose much harsher discipline than was recommended by the referee and was agreed to by The Florida Bar disregards the important considerations underlying this Court's historical deference to a referee's recommended discipline. See Fla. Bar v. Glueck, 985 So. 2d 1052, 1058 (Fla. 2008) ("[G]enerally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions."). This Court has explained that it generally defers to the

discipline recommended by the referee in bar discipline cases because "[t]he referee, as finder of fact in Bar disciplinary proceedings, is in a unique position to assess the credibility of witnesses and appraise the circumstances surrounding alleged violations," and that the referee "occupies a favored vantage point for assessing key considerations—such as a respondent's degree of culpability and his or her cooperation, forthrightness, remorse, and rehabilitation (or potential for rehabilitation)." Fla. Bar v. Lecznar, 690 So. 2d 1284, 1287-88 (Fla. 1997). By rejecting the referee's recommended discipline without any precedent showing that the sanction put forth by the referee was inappropriate, the majority discounts the referee's superior vantage point in assessing the unique nature of the Respondent's case and neglects this Court's historical deference to the referee's recommended discipline.

Although the majority is correct that this Court takes very seriously an attorney's compliance with tax requirements, this concern does not, standing alone, justify the harsh sanction that is imposed by the majority in this case. In my view, the mitigating circumstances that contributed to the Respondent's misconduct, as well as the mitigating evidence presented before the referee, support the referee's recommended discipline. Accordingly, because the majority's rejection of the referee's recommended discipline, which was agreed to by The Florida Bar and the Respondent, is predicated upon distinguishable case law and because the much

harsher sanction imposed by the majority does not further this Court's purposes for attorney discipline, I dissent.

PERRY, J., concurs.


Original Proceeding – The Florida Bar

John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, Florida; Adria E. Quintela, Staff Counsel, The Florida Bar, Sunrise, Florida; and Jan K. Wichrowski, Bar Counsel, The Florida Bar, Orlando, Florida,

for Complainant

Mark Stephen Peters of Berry and Peters, Viera, Florida,

for Respondent