PER CURIAM.
 

 Charles Behm has been a lawyer in this state since 1999. He is currently suspended from the practice of law as a result of professional misconduct in another Bar discipline case.
 
 [1]
 
 The referee in this case recommends that Behm be found guilty of professional misconduct related to trust account violations and failure to file income tax returns since the time he became a lawyer.
 
 [2]
 

 As a lawyer admitted to the practice of law by this Court, Behm earned money from the practice of law. Behm asserts, however, that he is not required to pay federal income taxes because “his time was his life capital and, in practicing law, he was trading his life capital for an hourly fee, both of equal value.” This argument is devoid of merit and lacks any basis in established law.
 

 With regard to Behm’s failure to file income tax returns from 1999 to the present, our recent admonition in another bar discipline case resounds here: “No doubt there are millions of Americans who would prefer not to have to deal with filing and paying their federal income taxes each April, but have no choice under the law. As guardians of the law, lawyers have a special obligation to honor the law themselves, including the tax laws.”
 
 Fla. Bar v. Del Pino,
 
 955 So.2d 556, 560-61 (Fla. 2007).
 

 We approve the referee’s recommendations of guilt but disapprove the recommendation of a six-month suspension because it is far too lenient. Behm’s continuing disregard for the laws requiring the filing of federal income tax returns, his refusal to pay federal income taxes on money he has earned in his law practice since 1999, and his avowed
 
 *140
 
 intention to persist in this conduct make it clear that Behm is unrepentant and regards himself as above the law. As set forth in more detail in this opinion, Behm declared in open court that he has no intention to file federal income tax returns in the future. His actions are fundamentally inconsistent with the basic obligations of a lawyer, who is sworn to uphold the law, and leave us no option but to permanently disbar him from the practice of law.
 

 FACTS
 

 In April 2007, the Florida Bar filed a two-count complaint with the Court, alleging that Behm engaged in unethical conduct. The first count of the complaint alleged that Behm failed to prepare and maintain certain required trust account records. The second count alleged that Behm failed to file federal income tax returns and to pay federal income taxes from 1999 to 2006, despite having taxable income exceeding the threshold amount triggering the legal obligation to file. Following a lengthy procedural course, the referee submitted the amended report in March 2009, which is currently under consideration.
 
 [3]
 
 In the amended report, the referee found that the following facts had been proven by clear and convincing evidence.
 

 As to Count I (trust account records), the Bar served Behm with a subpoena duces tecum on August 24, 2004, for the production of any and all trust account records, including but not limited to: deposit slips, checkbooks, canceled checks, check stubs, ledger cards, journals, closing statements, bank statements and reconciliations, monthly comparisons, fee agreements, and documentary evidence supporting all trust disbursements for the period October 1, 2001, to April 30, 2003. Following an audit of Behm’s trust account records, the Bar’s Chief Auditor, Clark Pearson, concluded that Behm’s records were not in substantial compliance with the rules regulating trust accounts.
 

 The records that were missing included: (1) separate cash receipts and disbursements journals, bank reconciliations, and monthly comparisons; (2) a number of client ledger cards detailing each deposit and disbursement, as well as the payee and check number for the checks and the reason for which all trust funds were received, disbursed, or transferred; and (3) duplicate bank deposit slips for his trust account. Further, Behm’s trust account was not properly identified as a “trust account.”
 
 [4]
 
 However, there was no evidence that Behm misappropriated client funds.
 

 With regard to Behm’s proven trust account conduct, the referee recommends
 
 *141
 
 that Behm be found guilty of violating Rules Regulating the Florida Bar 4-1.15 (failing to comply with the trust account rules); 5-1.2(b)(1) (failing to maintain a separate account in the name of the lawyer or law firm and clearly labeled and designated as a “trust account”); 5-1.2(b)(2) (failing to maintain original or duplicate deposit slips); 5-1.2(b)(5) (failing to maintain a separate cash receipts and disbursements journal); 5-1.2(b)(6) (failing to maintain a separate file or ledger with an individual card or page for each client or matter); 5-1.2(c)(l)(a) (failing to make monthly reconciliations of all trust accounts); 5-1.2(c)(1)(b) (failing to make a monthly comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages); and 5-1.2© (failing to produce all records and papers concerning property and funds held in trust and to provide such explanations as may be required for the audit).
 

 As to Count II (taxes), the referee found that Behm failed to file personal or business income tax returns or to pay taxes on earned income from 1999 to 2006. Although Behm has not been charged with or convicted of a crime, his failure to file and pay taxes was unlawful.
 

 Behm became a member of the Bar in 1999 and went to work for the State Attorney’s Office. Prior to becoming a member of The Florida Bar in 1999, Behm was an officer in the United States Navy and regularly filed and paid federal income taxes.
 

 Behm opened his own law office in or around 2000. From that time to the present, he has run his law office as a sole proprietorship, never as a professional corporation or limited liability company. From 1999 to the present, Behm received at least $400 per year in legal tender or in-kind remuneration for his legal services.
 

 The Bar’s expert witness, Clark Pearson, testified that any self-employed person who earned at least $400 annually was legally obligated to file a federal income tax return pursuant to the Internal Revenue Code.
 
 See also
 
 I.R.C. § 1402(b)(2) (2006). He further testified concerning the amount of money deposited into Behm’s operating account during several of those years (from July 81, 2004, to July 31, 2007, Behm deposited $426,926.28 into his business operating account, a monthly average of $11,538.55) and that the amounts would have been enough to legally obligate Behm to pay taxes in those years.
 

 The Bar also introduced evidence that in a deposition taken on August 23, 2003, in a North Carolina personal injury case in which Behm was the plaintiff,
 
 [5]
 
 Behm stated that the records prepared by his legal assistant indicated net earnings in his law practice of $22,400 in 2000; $37,000 in 2001; and $9,700 in 2002. Behm also received $15,000 in settlement funds in his personal injury case.
 

 The referee also considered the trial court’s order of November 9, 2005, entered in the personal injury case, that dismissed Behm’s complaint with prejudice for failing to obey orders compelling discovery. In that order, the trial court found that Behm stated “that he had been gainfully employed and earned taxable income during the period from 1998 through 2004 and that he had (1) not filed any tax returns with any state or federal agency and (2)
 
 *142
 
 not paid any income taxes to any state or federal agency during that period.”
 

 In the Bar disciplinary proceedings, Behm testified that he had not filed federal income tax returns since 1999. Thus, Behm did not file either personal or business federal income tax returns from 1999 through 2006. Furthermore, Behm did not pay federal income taxes for that same period, either personal or business.
 

 The referee found: “In mitigation, [Behm] argued that he has a good faith belief that he is not obligated to file federal tax returns or pay taxes.” The referee further found that although Behm has been personally compensated for his legal services, Behm argued that he has not received income as defined by the United States Supreme Court’s current definition of income. Behm claimed the federal tax system is mandatory for some people, but not for others. Behm maintained that the Bar expects him to testify against himself in a quasi-administrative arena (the disciplinary proceedings) about issues that could reasonably result in criminal prosecution. The referee expressly found the Bar’s expert’s testimony credible and accepted his opinions that Behm was legally obligated to file federal income tax returns and to pay federal income taxes for the years at issue.
 

 With regard to Behm’s proven tax conduct, the referee recommended that Behm be found guilty of violating rules 3-4.3 (committing any act that is unlawful or contrary to honesty and justice) and 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
 

 The referee found three aggravating factors applicable in this case: (1) a prior disciplinary offense;
 
 [6]
 
 (2) a refusal to acknowledge the wrongful nature of his conduct (Behm maintains that the current form of federal taxation in the United States is unconstitutional despite established law to the contrary); and (3) substantial experience in the practice of law. The referee found three mitigating factors: (1) the absence of a dishonest motive (the referee noted his belief that Behm is an honest person who made some bad choices); (2) personal or emotional problems (based on the fact that multiple members of Behm’s family were killed in a traffic accident in which Behm was also involved); and (3) physical or mental disability or impairment (based on the fact that Behm sustained multiple injuries in a traffic accident in late 2001).
 

 The referee recommended that Behm be suspended for ninety days for his trust account violations and ninety-one days, followed by two years of probation (to run consecutively) for his tax misconduct and ordered Behm to pay the Bar’s costs. Behm petitioned for review.
 

 ANALYSIS
 

 Initially, we note that all of Behm’s arguments on review address the tax conduct. We approve the referee’s findings of fact and recommendations of guilt as to the trust account violations without further discussion.
 

 
 *143
 
 As to the tax conduct, Behm makes the following arguments: (1) the referee inappropriately relied on the North Carolina court’s order in finding that he had income during the relevant time period; (2) the referee abused his discretion in allowing Pearson to testify as the Bar’s expert witness on taxation issues; (3) the referee’s findings that Behm earned sufficient taxable income to trigger a duty to file and pay income taxes for the years in question are not supported by competent, substantial evidence; and (4) the referee’s recommendations of guilt are not supported by the referee’s findings. We discuss each of these in turn.
 

 The North Carolina Trial Court Order
 

 The Court reviews a referee’s actions regarding admissibility of evidence in Bar discipline cases for an abuse of discretion.
 
 Fla. Bar v. Tobkin,
 
 944 So.2d 219, 224 (Fla.2006). Behm takes exception to the referee’s decision to allow the Bar to admit into evidence the order of the North Carolina trial court in Behm’s personal injury case. That order was the result of the defendants’ motion to dismiss the complaint on the grounds that Behm failed to comply with the rules of discovery and orders compelling discovery. The order dismissed Behm’s complaint with prejudice for failing to obey orders compelling discovery.
 

 The referee properly admitted the order into evidence and considered it in making his findings. “Because Bar disciplinary proceedings are quasi-judicial rather than civil or criminal, the referee is not bound by technical rules of evidence.”
 
 Id.
 
 Thus, “a referee has wide latitude to admit or exclude evidence, and may consider any relevant evidence, including hearsay and the trial transcript or judgment in a civil proceeding.”
 
 Id.
 
 (citations omitted).
 

 Behm objected to the fact that the order referred to his earnings as “income.” However, the order was not the only evidence that Behm had earnings that constituted “income.” Pearson’s expert testimony, Behm’s financial records, and Behm’s own testimony established that Behm earned money during the relevant period above the threshold amount that triggered a duty to file income tax returns. Thus, even if the order had been excluded, there would have been competent, substantial evidence that Behm earned enough money during the relevant time period to require him to file returns and pay taxes.
 

 Pearson’s Expert Testimony
 

 Behm contends that the referee should not have relied on the Bar’s expert’s testimony because the expert witness, Clark Pearson, admitted he was unfamiliar with certain United States Supreme Court cases that allegedly support Behm’s position. This argument is mer-itless. Pearson was not offered as a legal expert. As the Bar’s Chief Auditor, his expertise is in accounting, and his testimony was limited to his review of Behm’s records from which he was able to express an opinion as to the amount of income Behm received as a lawyer and whether the amounts were sufficient to trigger an obligation to file federal income tax returns. In any event, Behm waived any objection to the referee’s acceptance of Pearson as an expert by failing to object to his designation as such or to any of his testimony.
 

 Behm’s Taxable Income
 

 There is competent, substantial record evidence that Behm was required to file federal income tax returns and that he had taxable income for the tax years 1999 to 2006. The referee’s findings are, first of all, supported by Behm’s own admissions. Prior to trial, Behm stipulated, on the record, that he had not filed federal
 
 *144
 
 income tax returns and had not paid federal income taxes for the tax years 1999 through 2006. Behm also testified that he had net earnings of approximately $22,400 in 2000, $37,000 in 2001, and $9,700 in 2002. In addition, he testified that he earned an annual salary of approximately $30,000 when he worked for the State Attorney’s Office in 1999. These findings are also supported by Behm’s testimony in other proceedings in which he was a party. In addition, the Bar’s expert testified concerning the amount of money Behm received as a lawyer.
 

 Behm’s dispute is not with whether he received money from the practice of law but whether the money constituted “income” for purposes of filing federal income tax returns. According to Behm, he derived no net gain from the practice of law because his time was his life capital and, in practicing law, he was trading his life capital for an hourly fee, both of equal value. Thus, he realized no profit or net income from these transactions.
 

 Critically, Behm cites no case or other authoritative source that supports, even tangentially, his primary proposition — that his earnings did not constitute taxable income because the earnings he received in exchange for billable hours resulted in no gain. He ignores numerous United States Supreme Court opinions, more recent than the cases on which he purportedly relies, that address what constitutes “income.”
 

 The money Behm earned from the practice of law clearly falls within the definition of “income.” For example, in
 
 Commissioner v. Glenshaw Glass Co.,
 
 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955), in addressing the definition of “gross income” in § 22 of the tax code at that time, the Court stated: “The sweeping scope of the controverted statute is readily apparent.”
 
 Id.
 
 at 429, 75 S.Ct. 473. Section 22 provided that gross income included “gains, profits, and income derived from salaries, wages, or compensation for personal service ... of whatever kind and in whatever form paid, or from professions, vocations, trade, businesses, commerce, or sales ... or gains or profits and income derived from any source whatever.”
 
 Id.
 
 (quoting I.R.C. § 22(a) (1939)). The
 
 Glenshaw
 
 Court held that Congress had intended to exert “the full measure of its taxing power” and recognized that “the Court has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted.”
 
 Id.
 
 at 429-30, 75 S.Ct. 473. The United States Supreme Court expressly rejected the
 
 Glenshaw
 
 respondents’ contention that
 
 Eisner v. Macomber, 252
 
 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920), required it to narrowly construe § 22. 348 U.S. at 430, 75 S.Ct. 473.
 
 [7]
 
 The
 
 Glenshaw
 
 Court pronounced the alternate definition of “gross income” still in use today: “Here we have instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion.”
 
 Id.
 
 at 431, 75 S.Ct. 473.
 

 The money derived by Behm from his practice of law clearly satisfies this definition of “gross income.” Further, the current-day Internal Revenue Code provision defining “gross income” defines it to include “all income from whatever source derived,” including, but not limited to, “(1) [c]ompensation for services, including fees, commissions, fringe benefits, and similar items;” and “(2) [gjross income derived from business.” I.R.C. § 61 (2006). Clearly, he, like every lawyer in this state who enjoys the privilege of practicing law, earns income when he provides legal services to clients and receives compensation
 
 *145
 
 in exchange. None of the cases cited by Behm cast doubt on this conclusion.
 
 [8]
 

 Behm’s “Good Faith” Belief
 

 Behm asserts that the referee found that he held a “good faith” belief that he was not required to pay income tax or file a federal income tax return. We begin by noting what the referee in fact found: “In mitigation, [Behm] argued that he has a good faith belief that he is not obligated to file federal tax returns or pay taxes.” This is not the same as a finding that Behm actually
 
 had
 
 a good faith belief, as argued by Behm. Rather, it is a finding that Behm made this argument before the referee.
 

 As to Behm’s good faith belief that he is not required to pay income taxes, he argues in his initial brief that “time has value and time expended is capital that is not recoverable.” There is no support for this time-as-life-capital argument. None of the cases he cites make any statements to this
 
 *146
 
 effect, even in dicta. The arguments and cases upon which Behm supposedly relies or relied for support of his “good faith” belief do not provide a plausible basis on which to establish a good faith belief.
 

 In fact, Behm’s arguments have been expressly rejected and labeled “frivolous” by the federal courts. In
 
 Hyslep v. United States,
 
 765 F.2d 1083 (11th Cir.1985), the court affirmed the federal district court’s assessment of a $500 civil penalty against a taxpayer for filing a frivolous income tax return.
 
 Id.
 
 at 1084. The taxpayer had filed a return in which he deducted, as an adjustment to income, the full amount of wages he had received on the ground that he was a “source-exchanger” and, therefore, his wages were “nontaxable.”
 
 Id.
 

 [9]
 

 The Eleventh Circuit noted that such arguments have been “long held to be frivolous.”
 
 Id.
 

 One of the cases cited by the Eleventh Circuit Court of Appeals in
 
 Hyslep
 
 is
 
 Lonsdale v. Commissioner,
 
 661 F.2d 71 (5th Cir.1981). In
 
 Lonsdale,
 
 the Fifth Circuit Court of Appeals identified three separate arguments made by the taxpayers in their pro se brief: (1) “the United States Constitution forbids taxation of compensation received for personal services because the exchange of services for money is a zero-sum transaction, the value of the wages being exactly that of the labor exchanged for them and hence containing no element of profit”; (2) the income tax is a direct one that must be apportioned among the several states; and (3) the Seventh Amendment entitled them to a jury trial.
 
 Id.
 
 at 72. The Fifth Circuit rejected all of these arguments, stating:
 

 Appellants’ contentions are
 
 stale
 
 ones,
 
 long settled
 
 against them. As such they are
 
 frivolous.
 
 Bending over backwards, in indulgence of appellants’ pro se status, we today forbear the sanction of Rule 38, Fed.RApp.P.
 
 We publish this opinion as notice to future litigants that the continued advancing of these long-defunct arguments invites such sanctions, however.
 

 Id.
 
 (emphasis added);
 
 see also Lonsdale v. United States,
 
 919 F.2d 1440, 1448 (10th Cir.1990) (listing arguments that are completely lacking in legal merit and patently frivolous, including the arguments that wages are not income, that the income tax is voluntary, that the term “income” as used in the tax statutes is unconstitutionally vague and indefinite, and that no statutory authority exists for imposing an income tax on individuals).
 

 Hyslep
 
 and
 
 Lonsdale
 
 were both decided well before Behm stopped filing returns and paying income taxes. As a member of the Bar trained in legal research, Behm could have and should have researched the law in this area rather than adopting unsupported and discredited theories.
 

 Behm’s argument that he may “refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists” without violating rule 4-8.4 has its limits. Where the claim asserted has been decisively rejected by the courts, the attorney can no longer maintain that his assertion of the claim is made in good faith and is not frivolous. In
 
 Florida Bar v. Committe,
 
 916 So.2d 741 (Fla.2005), we stated:
 

 Neither the Bar nor this Court wishes to stifle innovative claims by attorneys. Nevertheless, under the rules of professional conduct, the pursuit of imaginative claims is not without limit. The standard embodied in rule 4-3.1, requiring a good-faith argument for the extension, modification, or reversal of existing law, is broad enough to encompass those
 
 *147
 
 cases where the claims are the result of innovative theories rather than, as here, an obsessive attempt to relitigate an issue that has failed decisively numerous times. The federal court in this case specifically found this claim to be frivolous and malicious.
 

 Id.
 
 at 747 (quoting
 
 Fla. Bar v. Richardson,
 
 591 So.2d 908, 910-11 (Fla.1991));
 
 see also Fla. Bar v. Bailey,
 
 803 So.2d 683, 693 (Fla.2001) (stating that an attorney “is not permitted to ignore and refuse to follow a court order based upon his personal belief in the invalidity of that order” and that to “countenance that course [would be] to court pandemonium and a breakdown of the judicial system”).
 

 Finally, the Internal Revenue Code contains provisions that allow a taxpayer who disputes his legal obligation to file or pay taxes to do so through alternate means. See,
 
 e.g.,
 
 I.R.C. §§ 6401-6404, 7422 (2006 & Supp.2007). To the extent Behm truly believed that the money he earned through the practice of law was not income, he could have used these alternate procedures to obtain a definitive ruling.
 

 Accordingly, we reject Behm’s argument that he cannot be found guilty of violating the Rules Regulating the Florida Bar because he has or had a good faith belief that he was not obligated to file federal tax returns or pay federal income taxes.
 

 The Recommendations of Guilt
 

 In this case, the referee recommends that Behm be found guilty of violating rules 3-4.3 and 4-8.4(c). Rule 3-4.3 provides, in pertinent part, that the “commission by a lawyer of
 
 any act that is unlawful
 
 or
 
 contrary to honesty and justice,
 
 whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline.” (Emphasis added.) Rule 4-8.4(c) prohibits an attorney from “engaging] in conduct involving
 
 dishonesty,
 
 fraud, deceit, or
 
 misrepresentation.”
 
 (Emphasis added.)
 

 The recommendations of guilt are adequately supported by the referee’s findings in this case. The referee expressly found that Behm’s failure to file either personal or business federal income tax returns from 1999 through 2006 was unlawful and that his failure to pay federal income taxes, either personal or business, was unlawful. The referee noted that Behm “has not been charged with any crime relating to his failure to pay income taxes or to file income tax returns,” but that his failures to file and pay were nevertheless “unlawful.” The fact that Behm was not charged or prosecuted for his conduct is not inconsistent with the referee’s finding that Behm’s conduct was unlawful and his recommendations that Behm be found guilty of violating rules 3-4.3 and 4-8.4(c).
 

 We reject Behm’s argument that he cannot be prosecuted by The Florida Bar for violations of the Rules Regulating the Florida Bar because he has not been prosecuted criminally for tax fraud or evasion. Rule 3^4.4 expressly allows the Bar to initiate disciplinary action “regardless of whether the respondent has been tried, acquitted, or convicted in a court for the alleged criminal offense.” This language makes it clear that a disciplinary violation premised on a violation of law is separate from the initiation or outcome of criminal proceedings based on the same conduct.
 

 Behm’s argument that he cannot be found to have violated the rules at issue without an express finding of intent is also without merit. While this Court has held that “in order to sustain a violation of rule 4-8.4(c), the Bar must prove intent,” this Court has also stated that the intent ele
 
 *148
 
 ment can be satisfied “merely by showing that the conduct was deliberate or knowing.”
 
 Fla. Bar v. Brown,
 
 905 So.2d 76, 81 (Fla.2005);
 
 see also Fla. Bar v. Riggs,
 
 944 So.2d 167, 171 (Fla.2006) (holding intent, as an element for disciplining an attorney for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, is proven by establishing that the conduct was deliberate or knowing);
 
 Fla. Bar v. Barley,
 
 881 So.2d 163, 169 (Fla.2002) (same);
 
 Fla. Bar v. Fredericks,
 
 731 So.2d 1249, 1252 (Fla.1999) (same).
 

 There is no question that Behm deliberately and knowingly decided not to file income tax returns or to pay income taxes during the years in question. This is sufficient to satisfy the intent element of these rules.
 

 The Sanction
 

 Neither Behm nor the Bar petitioned for review of the referee’s recommended sanction.
 
 [10]
 
 However, in reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because ultimately it is this Court’s responsibility to order the appropriate sanction.
 
 See Fla. Bar v. Anderson,
 
 538 So.2d 852, 854 (Fla.1989);
 
 see also
 
 art. V, § 15, Fla. Const.
 

 After reviewing the record in this case, the referee’s report, and the briefs before this Court, the Court determined that the recommended sanction of what would amount to a six-month suspension appeared too lenient and, accordingly, requested responses from both Behm and the Bar as to whether the sanction imposed against Behm should be significantly increased up to and including disbarment. Because of the seriousness of the misconduct, the Court scheduled oral argument, specifically directing Behm to appear. The Court issued a second order to show cause after oral argument, directing the Bar and Behm to show cause as to why Behm should not be permanently disbarred. In deciding the appropriate sanction in this case, we have considered all responses filed by the Bar and Behm.
 

 “[A]s a starting point, we look to the Florida Standards for Imposing Lawyer Sanctions.... This Court must also review existing case law to determine whether there is a basis for the recommended discipline.”
 
 Brown,
 
 905 So.2d at 83-84. Standard 5.11 of the Florida Standards for Imposing Lawyer Sanctions provides that disbarment is appropriate when “a lawyer engages in ... intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer’s fitness to practice.” Standard 7.1 provides that disbarment is appropriate when “a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.” Both of these standards clearly apply to Behm’s misconduct.
 

 We have also reviewed our prior cases involving failure to file income tax returns. In
 
 Florida Bar v. Del Pino,
 
 the most recent case with a somewhat similar fact pattern, we imposed a three-year suspension on a respondent who was convicted of two felonies. 955 So.2d at 558-59. One of the respondent’s convictions was for filing a false motion for extension to file and pay taxes in which she swore that she believed she owed no tax when she had earned significant income in the applicable year.
 
 *149
 

 Id.
 
 at 560. The respondent testified that she filed the false motion so she would “not have to deal with it.”
 
 Id.
 
 We agreed with the referee that this was a selfish motive.
 
 Id.
 
 We expressly noted that but for the significant mitigation in that case, the sanction would have been disbarment.
 
 Id.
 
 at 563. We also noted that we have “frequently disciplined attorneys for failing to live up to the duty of every citizen to pay federal income taxes.”
 
 Id.
 
 at 561 (citing
 
 Fla. Bar v. Smith,
 
 650 So.2d 980, 981-82 (Fla.1995) (suspending an attorney for three years for tax evasion and other misconduct where the attorney had underre-ported his income due to financial pressures and an inability to pay the full tax owed, but recognizing that the Court will not “hesitate[] to disbar attorneys who knowingly and willfully engage in the felonious conduct of filing or assisting in filing fraudulent income tax returns”);
 
 Fla. Bar v. Nedick,
 
 603 So.2d 502, 503 (Fla.1992) (disbarring an attorney based on a conviction for attempting to evade or defeat tax in violation of federal law));
 
 see also Fla. Bar v. Weed,
 
 559 So.2d 1094, 1096 (Fla. 1990) (suspending an attorney for three years for, among other things, failing to file income tax returns for four years, and recognizing that a failure to file tax returns amounts to engaging in illegal conduct involving moral turpitude);
 
 Fla. Bar v. Hosner,
 
 536 So.2d 188, 188 (Fla.1989) (disbarring an attorney after he was convicted of mail fraud and felony charges of assisting in the preparation of false income tax returns).
 

 Here, Behm has engaged in a lengthy course of conduct to impede and obstruct the collection of income taxes on his own income, for his own personal gain. In this instance, however, our prior cases sanctioning lawyers for failing to file income tax returns or to pay income taxes provide only limited guidance because we are, for the first time, presented with a lawyer who declared at oral argument before this Court that he fully intends to maintain his current course of conduct,
 
 i.e.,
 
 he will continue to not file federal income tax returns and to not pay federal income taxes on money he earns in his law practice, apparently until someone shows him a more definitive law or United States Supreme Court opinion that disabuses him of his faulty beliefs.
 
 [11]
 
 Such a stance is anathema to an attorney’s ethical obligation to respect and obey the law.
 

 In fact, in his response to the Court’s order for additional briefing on the appropriate sanction for the misconduct, Behm stated:
 

 Lawyers are sworn to protect the Constitution and to uphold the law. Any ethical lawyer is obligated to question that which appears to be a transgression of the law, the misapplication of a law,
 
 *150
 
 or the lack of liability for a duty presumed imposed under a law. A lawyer has an ethical obligation to assist in improving the legal system. Thus, a lawyer has not only a right, but a duty to advocate and advance arguments of law that are unique or unconventional so long as there is a reasonable basis for the argument. Behm has done just this. He has cited to specific sections of the Internal Revenue Code and to United States Supreme Court cases that have never been overturned or modified to show that Behm’s position has both a reasonable and a very sound basis in the law.
 

 However, the state of the law in this area could not, in our opinion, be any clearer. It is completely unacceptable for a member of The Florida Bar to continue to assert legal theories that have been repeatedly rejected and discredited and to use them as an excuse for engaging in unlawful conduct.
 
 [12]
 

 While a lawyer, on behalf of a client or even on his own behalf, may raise any legal argument that he deems supported by law, he may not use his own unsupported interpretation of the laws to place himself above the law. We view Behm’s actions to be a violation of his basic ethical obligation as a lawyer and his intentional actions to be flagrant violations of the Rules Regulating the Florida Bar.
 

 We have considered whether there is any mitigation that would alter our decision as to a sanction. The referee found that Behm had “personal or emotional problems” based on the fact that multiple members of Behm’s family were killed in a traffic accident in which Behm was also involved. The referee also found “physical disability or impairment” based on the fact that Behm sustained multiple injuries in this traffic accident. In reviewing the basis for these findings in the record, we note that Behm included a transcript in his appendix to one of his briefs from the personal injury case in which he mentions that he had to bury his family. He introduced the letter/affidavit of a physician stating that he was treating Behm for depression. There was no testimony by Behm correlating his losses from this traffic accident to his tax behavior. We do not consider this mitigation evidence (which Behm does not even argue on review) sufficient to alter our assessment of the severity of the misconduct in this case.
 

 Furthermore, in determining a proper sanction, the Court also takes the three purposes of lawyer discipline into consideration.
 

 First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
 

 Fla. Bar v. Barrett,
 
 897 So.2d 1269, 1275-76 (Fla.2005) (quoting
 
 Fla. Bar v. Lord,
 
 433 So.2d 983, 986 (Fla.1983));
 
 see also Fla. Bar v. Cohen,
 
 919 So.2d 384 (Fla. 2005);
 
 Fla. Bar v. Spear,
 
 887 So.2d 1242, 1246 (Fla.2004);
 
 Fla. Bar v. Lord,
 
 433 So.2d 983, 986 (Fla.1983).
 

 Behm began his practice as a lawyer as an Assistant State Attorney and from that
 
 *151
 
 point in time proceeded to violate the law by failing to file income tax returns. He also has a history of discipline, including a public reprimand in 2007 as a result of “conduct prejudicial to the administration of justice” in a probate matter and a ninety-one-day suspension from the practice of law for his conduct in a guardianship proceeding that raised serious issues concerning his fitness to practice law.
 
 See supra
 
 note 1. In that case,
 
 Florida Bar v. Behm,
 
 Case No. SC08-85, Behm filed a guardianship petition alleging that his client’s elderly mother was incompetent. Behm’s improper behavior extended to allowing the taping of a telephone conversation between his client and his client’s elderly mother during which Behm coached his client concerning which questions to ask and engaged in conduct that the referee termed “inappropriate and reprehensible.” The referee further found that Behm “allowed his client to obtain [the mother’s] signature on [a] durable power of attorney even as he was arguing that [the mother] was incompetent.” The referee also found that Behm engaged in “improper and harassing conduct toward opposing counsel.”
 

 In the case currently under consideration, he has openly declared his intention at oral argument to persist in refusing to file income tax returns “[u]nless the law changes or unless someone can show me a law that makes me clearly liable for income tax, for federal income tax.”
 
 See supra
 
 note 11. By his own voluntary actions, Behm has forfeited his privilege to practice law.
 

 The only appropriate sanction under these circumstances — cumulative misconduct and a persistent course of unrepentant misconduct — is permanent disbarment from the practice of law.
 

 CONCLUSION
 

 We approve the referee’s findings of fact and recommendations of guilt. We disapprove the recommendations of sanction and, instead, permanently disbar Charles Behm from the practice of law in Florida. As Behm is currently suspended from the practice of law in Florida, the permanent disbarment will be effective from the date of this opinion.
 

 Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Charles Behm in the amount of $21,086.74, for which sum let execution issue.
 
 [13]
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . In
 
 Florida Bar v. Behm,
 
 9 So.3d 615, 2009 WL 1099989 (Fla.2009) (table) (Case No. SC08-85), this Court suspended Behm for ninety-one days, effective May 23, 2009, for violating Rules Regulating the Florida Bar 4-1.1 (failing to provide competent representation); 4-3.3(a)(2) (knowingly failing to disclose a material fact to a tribunal to avoid assisting a criminal or fraudulent act by a client); 4-3.4(a) (unlawfully obstructing another party’s access to evidence or unlawfully altering, destroying, or concealing a document or other material that is relevant to a pending or a reasonably foreseeable proceeding or counseling or assisting another person to do so); 4-3.4(h) (threatening to present disciplinary charges solely to obtain an advantage in a civil matter); 4-4.2(a) (while representing a client, communicating about the subject of the representation with a person the lawyer knows to be represented, without the consent of the person’s lawyer); and 4-8.4(g) (failing to respond, in writing, to any official inquiry by Bar counsel in an investigation into the lawyer's conduct). Neither party petitioned for review of the findings of guilt or the recommended discipline of a rehabilitative suspension in that case. Behm has not sought reinstatement.
 

 [2]
 

 . We have jurisdiction under article V, section 15, of the Florida Constitution, which provides that the "supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted.”
 

 [3]
 

 . The Court rejected a stipulated consent judgment calling for a ninety-day suspension and remanded to the referee for further proceedings. After the referee filed the amended report, the Court issued an order scheduling oral argument and directing the Bar and Behm to brief the issue of the Court's authority to impose a sanction in excess of the sanction recommended by the referee, up to and including disbarment. Oral argument was held on February 11, 2010.
 

 Subsequent to oral argument, the Court issued a second order to show cause, which directed the Bar and Behm to show cause as to why Behm should not be permanently disbarred. The Bar and Behm filed responses, which we have considered in our decision as to the sanction to be imposed.
 

 [4]
 

 . Behm's checks were labeled "Charles Behm, Attorney at Law, I.O.T.A.” The I.O.T.A. designation was insufficient to satisfy the requirement of rule 5-1.2(b)(1) that a lawyer maintain a separate account or accounts in the name of the lawyer or law firm and clearly labeled and designated as a "trust account.”
 

 [5]
 

 . The proceeding was Case No. 05-CVS-721 in the General Court of Justice, Superior Court Division, Cabarrus County, North Carolina, and was filed against the Estate of Calvin E. Hutson and Connie M. Hutson and the Estate of Kelli Norwood and Diann Elizabeth Norwood.
 

 [6]
 

 . Behm was publicly reprimanded in
 
 Florida Bar
 
 v.
 
 Behm,
 
 963 So.2d 228, 2007 WL 2259831 (Fla.2007) (table) (Case No. 06-294), for failing to advise the probate court that his client’s answer to a question posed to him by opposing counsel had been misleading or to withdraw from the representation of the client, in violation of rule 4-8.4(d) (prohibiting conduct prejudicial to the administration of justice). The referee did not consider the ninety-one-day suspension imposed by this Court in
 
 Florida Bar v. Behm,
 
 9 So.3d 615, 2009 WL 1099989 (Fla.2009),
 
 see supra
 
 note 1, because it was imposed after the time at which the referee's report was filed.
 

 [7]
 

 .
 
 Eisner
 
 is one of the cases relied on by Behm.
 

 [8]
 

 . Behm relies on
 
 Doyle v. Mitchell Brothers Co.,
 
 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054 (1918), for his theory that he had no taxable income during the tax years in question.
 
 Doyle
 
 addressed the Corporation Excise Tax Act of August 5, 1909, and considered the issue of how to apply the Act to gains acquired through an increase in the value of capital assets (timber in that case) acquired before the Act took effect and converted into money after it took effect.
 
 Id.
 
 at 180, 183, 38 S.Ct. 467. Even assuming that
 
 Doyle
 
 stood for the proposition that Behm asserts, Behm could not have had a reasonable belief that
 
 Doyle
 
 was controlling law in 1999 or since on the issue of what constitutes taxable income under current tax law.
 

 The other case Behm greatly relies upon,
 
 Eisner v. Macomber,
 
 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920), is no more supportive than
 
 Doyle.
 
 In that case, the Court interpreted the Revenue Act of September 8, 1916, and decided whether Congress intended, in passing the Act, to tax stock dividends as income.
 
 Id.
 
 at 199-200, 40 S.Ct. 189.
 
 Eisner
 
 applies only to stock dividends.
 
 Id.
 
 at 211, 40 S.Ct. 189 ("[W]e are considering the taxability of bona fide stock dividends only.”).
 

 Behm cites to
 
 United States v. Merriam,
 
 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240 (1923), and
 
 Gould
 
 v.
 
 Gould,
 
 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917), for the proposition that taxing statutes must be strictly interpreted and any doubt as to their meaning resolved in favor of the taxpayer. However, this proposition is irrelevant to this case because the Internal Revenue Code is clear that the money Behm earned in the practice of law is income. Further, the Court has held more recently that the "starting point in the determination of the scope of 'gross income' is the cardinal principle that Congress in creating the income tax intended ‘to use the full measure of its taxing power' ” and "to tax all gains except those specifically exempted.”
 
 Comm’r v. Kowalski,
 
 434 U.S. 77, 82-83, 98 S.Ct. 315, 54 L.Ed.2d 252 (1977).
 

 The other cases cited by Behm are also unsupportive of his argument. The case of
 
 United States v. Calamaro,
 
 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957), which Behm cites for the proposition that IRS regulations cannot be used to expand the scope of the code, is irrelevant because the statutory provisions themselves clearly include the money Behm earned in the definition of gross income. As for
 
 M’Culloch v. Maryland,
 
 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), and
 
 Farrington v. Tennessee,
 
 95 U.S. 679, 24 L.Ed. 558 (1877), these cases predate the Sixteenth Amendment and the current version of the Internal Revenue Code. In
 
 Bailey v. Drexel Furniture Co.,
 
 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817 (1922), the Court struck down the Tax on Employment of Child Labor Act as an unconstitutional attempt to regulate child labor rather than a legitimate revenue-raising measure — which is not an issue in this case. Likewise, in
 
 Hill v. Wallace,
 
 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822 (1922), the Court struck down the Grain Future Trading Act for similar reasons. Finally, Behm's reliance on
 
 Stratton's Independence, Ltd. v. Howbert,
 
 231 U.S. 399, 34 S.Ct. 136, 58 L.Ed. 285 (1913);
 
 Butchers’ Union Slaughter-House & LiveStock Landing Co. v. Crescent City Live-Stock Landing & Slaughter-House Co.,
 
 Ill U.S. 746, 4 S.Ct. 652, 28 L.Ed. 585 (1884);
 
 Yick Wo v. Hopkins,
 
 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886);
 
 Koshland v. Helvering,
 
 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268 (1936); and
 
 Flint v. Stone Tracy Co.,
 
 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911), is equally misplaced.
 

 [9]
 

 . This is essentially the same as Behm's time-as-life-capital argument.
 

 [10]
 

 . Behm did not directly address the recommendations of discipline. Rather, Behm implicitly argued that the Bar failed to prove its case and, therefore, no sanction should be imposed.
 

 [11]
 

 . On rebuttal, the Court asked Behm to stand and tell the Court whether he intended to file income tax returns or to persist in not doing so. Behm stood and the following colloquy occurred:
 

 Behm: Your Honor, your Honors, I intend to follow the law as it applies to me. I would like somebody to show me where there is a law that makes me liable to pay a federal income tax. I would like somebody to show me where there is a law that makes me file an income tax absent—
 

 The Court: So you are, basically, sir, are you representing to this Court that based on your interpretation of the Internal Revenue Code, you will not be paying income taxes? Behm: No, ma’am. Based upon my, based upon the interpretation of the U.S. Supreme Court and U.S. Supreme Court cases, and the Internal Revenue Code—
 

 The Court: That you will not be paying income taxes—
 

 Behm: — Unless the law changes or unless someone can show me a law that makes me clearly liable for income tax, for federal income tax, then I am going to pursue the course of action I have up 'til now.
 

 [12]
 

 . We hereby direct the Clerk of this Court to provide a copy of our opinion to the United States Attorney’s Office in the appropriate district.
 

 [13]
 

 . This includes the amount recommended by the referee and an additional $328.26 that was incurred by Bar counsel to participate in oral argument.