PARIENTE, J.,
dissenting.
I respectfully dissent from the majority’s decision to reject the referee’s recommended discipline, which was agreed to by The Florida Bar and the Respondent, consisting of an eighty-nine-day suspension followed by a two-year period of probation, and instead suspend the Respondent for one year followed by a two-year period of probation.[3] In imposing a much harsher sanction than was recommended by the referee and concluding that the referee’s recommended discipline was without a reasonable basis in existing case law, the majority, in my view, erroneously relies on prior cases from this Court that are readily distinguishable from this case. While a review of this Court’s recent decisions on similar issues reveals that disbarment or a prolonged suspension, as imposed by the majority, is appropriate in some cases where an attorney fails to timely file tax returns, this Court has not recently addressed a case presenting misconduct that is similarly less aggravated and more mitigated as the Respondent’s, which was not predicated upon selfish motive and did not result in a criminal conviction as in the cases cited by the majority.
Unlike the majority, I would uphold the referee’s recommended discipline, which is a conclusion that is supported by the fact that the purposes behind lawyer discipline are not furthered — and are actually thwarted — by the sanction imposed by the majority. In addition to the fact that no clients were harmed by the Respondent’s actions and that there is extensive mitigation in this case, the extended rehabilitative suspension imposed by the majority will cause great hardship to the Respondent’s pro bono clients and will also impair the Respondent’s ability to meet her continuing obligations to the Internal Revenue Service (IRS).
The discipline being imposed on the Respondent arises from her failure to timely file joint personal tax returns and her failure to pay her employees’ withheld taxes to the federal government. As the majori *376 ty acknowledges, there was “no evidence that Respondent attempted to evade responsibility for personal income taxes.” Majority op. at 870. Indeed, as the majority notes, the failures that produced the misconduct at issue occurred as a result of the Respondent’s inability to pay the required taxes, during a time that she was “caring for several members of her extended family who had serious medical conditions.” Id. Further, the Respondent has subsequently taken responsibility for her actions, has entered into a monthly payment plan with the IRS to repay her back taxes, and has already made payments to the IRS in excess of $500,000.
As for the Respondent’s failure to pay her employees’ withheld taxes to the IRS, the majority also recounted the referee’s findings that the Respondent’s “failure to remit employment taxes was not based upon greed or selfish motivation,” and that the Respondent’s “lifestyle was not, and is not, lavish.” Majority op. at 371. Instead, as noted by the referee, the Respondent’s failure to pay the withholdings and the employer’s matching share was based solely upon the Respondent’s poor management of her practice’s finances. While this certainly does not justify her misconduct, it illustrates that the Respondent’s actions do not justify the severe sanction imposed by the majority. Moreover, the Respondent has also accepted responsibility for this misconduct and has entered into another payment plan with the IRS in order repay the employment taxes she failed to remit.
On the other side of the equation, the Respondent also presented substantial mitigating evidence before the referee, who was able to fully weigh this mitigating evidence in recommending appropriate discipline. The referee heard testimony from no less than nineteen witnesses, including distinguished judges and lawyers, who testified as to the Respondent’s good character and reputation, her continued commitment to provide legal services to the poor, and the fact that her derelictions were not motivated by personal greed but by personal circumstances. Indeed, it is undisputed that the Respondent has actively provided legal services for the less fortunate for the past twenty years.
The majority itself notes the “extensive number” of judges and attorneys who testified that the Respondent “is an able advocate who vigorously represents her clients in a capable and professional manner ... enjoys a good professional and ethical reputation among her clients, other attorneys, and the judiciary ... [and] provides valuable legal services to her clients, many of whom could not afford an attorney but for her.” Majority op. at 371. Some of the distinguished jurists who testified on the Respondent’s behalf included Judges Bruce W. Jacobus and Vincent Torpy, of the Fifth District Court of Appeal, and Judge J. Preston Silvernail, of the Eighteenth Judicial Circuit Court.
While the majority explicitly acknowledges all of this mitigation, it nevertheless concludes that even though the Bar continues to advocate for the agreed-to sanction recommended by the referee, the failure to file joint personal tax returns for such a lengthy period of time deserves much more serious discipline. Although I appreciate the aggravating factors found by the referee, and admit that failing to file tax returns constitutes serious misconduct, I conclude that the underlying misconduct in this case is substantially different than in the cases relied on by the majority and that this case involves the type of mitigation that does not require a rehabilitative sanction. Both of these factors differentiate this case from this Court’s recent decisions in which the Court has disciplined *377 attorneys for failing to timely file tax returns.
In Florida Bar v. Behm, 41 So.3d 136, 148-149 (Fla.2010), this Court discussed the range of recent cases in which this Court has disciplined attorneys who failed to timely file tax returns. For example, in Florida Bar v. Del Pino, this Court suspended an attorney for three years who had failed to file personal tax returns for several years based on a selfish motive, was convicted of two felonies, and had filed a false application for extension of time to file an income tax return. 955 So.2d 556, 558-59 (Fla.2007); see also Fla. Bar v. Smith, 650 So.2d 980, 981-82 (Fla.1995) (suspending an attorney for three years for two tax evasion convictions and other misconduct); Fla. Bar v. Nedick, 603 So.2d 502, 503 (Fla.1992) (disbarring an attorney based on a conviction for tax evasion and for filing a false tax return based upon a dishonest or selfish motive); Fla. Bar v. Weed, 559 So.2d 1094, 1096 (Fla.1990) (suspending an attorney for three years where the attorney was convicted for failure to file tax returns and also neglected legal matters). The majority relies on Del Pino, as well the other cases cited in Behm, as support for rejecting the referee’s recommended discipline and imposing a much harsher sanction. This reliance is misplaced, however, as each of these cases is readily distinguishable from this case.
Unlike the cases cited in Behm, the Respondent in this case did not willfully seek to avoid paying taxes, was truthful, was not charged with or convicted of any related crime, and has subsequently taken significant steps to remedy her past derelictions. Moreover, the mitigating circumstances underlying the Respondent’s misconduct demonstrate that her misconduct is qualitatively different than the misconduct in those cases where this Court has imposed harsh discipline. These differences highlight why the type of discipline imposed by this Court in the past is inappropriate in this case and provide support for imposing the type of discipline recommended by the referee.
The only recent case cited by the majority that could potentially support the majority’s rejection of the referee’s recommended discipline is Florida Bar v. Cimbler, 994 So.2d 306 (Fla.2008) (table decision), in which this Court suspended an attorney for two years for failure to timely file tax returns. However, Cimbler is unpublished and provides no background into the attorney’s misconduct. In the absence of any factual context for this Court’s decision to impose a two-year suspension in Cimbler, it is unclear whether this case is on point, and thus it cannot form the basis for overturning the referee’s recommended discipline because it does not establish that the referee’s recommended sanction had no reasonable basis in existing case law.
Additionally, the discipline imposed by the majority does not further the purposes that underlie attorney discipline, as articulated by this Court. In determining whether a sanction is appropriate, this Court has stated that it takes into account the following three purposes:
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
*378 Behm, 41 So.3d at 150 (quoting Fla. Bar v. Barrett, 897 So.2d 1269, 1275-76 (Fla.2005)). In light of these purposes, I believe the harsh sanction imposed by the majority is inappropriate. Although the majority’s sanction is undeniably severe enough to satisfy this Court’s goal of deterring future misconduct, this penalty does not further the remaining two purposes of attorney discipline.
In imposing attorney discipline, this Court must not deny the public the services of a qualified lawyer as a result of undue harshness. Id. As recognized by both the referee and the majority, many of the Respondent’s clients could not afford a lawyer if she did not agree to represent them. By suspending the Respondent from the practice of law for an extended period of time, this Court is denying the public the services of á competent lawyer, willing to represent those who would otherwise go unrepresented, for longer than is necessary to adequately punish the Respondent for her misconduct.
Further, the harsh punishment imposed by the majority is unfair to the Respondent, because it will severely impede her ability to satisfy her obligations to the IRS. Without the ability to practice law for one year, the Respondent will surely experience difficulty in making the monthly payments she is obligated to make pursuant to her IRS payment plans. In my opinion, where an attorney has admitted her misconduct, has shown remorse, and has taken steps to repay the taxes that she previously failed to pay, it is counterintui-tive to impose a lengthy suspension that will surely impair that attorney’s ability to repay the unpaid .taxes that are at the center of the misconduct.
It is also important to note that the majority’s decision to impose much harsher discipline than was recommended by the referee and was agreed to by The Florida Bar disregards the important considerations underlying this Court’s historical deference to a referee’s recommended discipline. See Fla. Bar v. Glueck, 985 So.2d 1052, 1058 (Fla.2008) (“[Gjenerally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions.”). This Court has explained that it generally defers to the discipline recommended by the referee in bar discipline cases because “[t]he referee, as finder of fact in Bar disciplinary proceedings, is in a unique position to assess the credibility of witnesses and appraise the circumstances surrounding alleged violations,” and that the referee “occupies a favored vantage point for assessing key considerations — such as a respondent’s degree of culpability and his or her cooperation, forthrightness, remorse, and rehabilitation (or potential for rehabilitation).” Fla. Bar v. Lecznar, 690 So.2d 1284, 1287-88 (Fla.1997). By rejecting the. referee’s recommended discipline without any precedent showing that the sanction put forth by the referee was inappropriate, the majority discounts the referee’s superior vantage point in assessing the unique nature of the Respondent’s case and neglects this Court’s historical deference to the referee’s recommended discipline.
Although the majority is correct that this Court takes very seriously an attorney’s compliance with tax requirements, this concern does not, standing alone, justify the harsh sanction that is imposed by the majority in this case. In my view, the mitigating circumstances that contributed to the Respondent’s misconduct, as well as the mitigating evidence presented before the referee, support the referee’s recommended discipline. Accordingly, because the majority’s rejection of the referee’s *379 recommended discipline, which was agreed to by The Florida Bar and the Respondent, is predicated upon distinguishable case law and because the much harsher sanction imposed by the majority does not further this Court’s purposes for attorney discipline, I dissent.
PERRY, J., concurs.

. The sanction imposed by the majority is actually more disparate from the referee’s recommended discipline than it first appears. Under the sanction imposed by the majority, not only will the Respondent be unable to practice law for one year, but, upon the expiration of that suspension, she will have to seek reinstatement — a procedure that is not automatic and oftentimes extends an attorney’s suspension by a substantial, additional period of time. See R. Regulating Fla. Bar 3-7.10 (providing the procedure through which a “lawyer who is ineligible to practice due to a court-ordered disciplinary suspension of 91 days or more’’ may seek to be reinstated to membership in good standing with The Florida Bar).